453 A.2d 940

COMMONWEALTH of Pennsylvania

v.

Robert A. MARTINEZ, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 18, 1982 *.

Decided Dec. 20, 1982.

* Inexcusably, the District Attorney of Luzerne County failed to file a brief on behalf of the Commonwealth.

418

Ronald J. Wydo, Wilkes-Barre (court-appointed), for appellant.

Chester B. Muroski, Dist. Atty., for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, Robert Martinez, and his co-defendant were charged with murder of the first degree, robbery and conspiracy in the beating death of John Charles Kenvin. A negotiated plea bargain resulted in a change of plea to guilty of murder of the third degree and robbery. The conspiracy charge was nol prossed and appellant was sentenced on June 27, 1979 in accordance with the plea bargain, ten to twenty years for murder of the third degree and ten to twenty years for robbery to run concurrent with the murder sentence. The plea bargain left to the court the decision whether the robbery sentence should run concurrent with or consecutive to the murder sentence.

This is an appeal from the denial of a hearing on appellant's petition to withdraw his plea of guilty [1] filed August 8, 1979. The record establishes that no recitation of the elements of the crimes or explanation of malice as an element of murder of the third degree was made during the plea colloquy as mandated by *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). However, we do not deem this oversight to be fatal on the record, as the circumstances surrounding the plea bespeak a voluntary and intelligent plea.

■ We addressed a similar case in our recent opinion in *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982)

1. Appellant's original presentation of these allegations was in a Post Conviction Hearing Act petition without benefit of counsel. This petition was properly treated by the lower court as a Petition to Withdraw Plea of Guilty.

(herein *Shaffer*). In *Shaffer,* we emphasized that while lack of *knowledge* of the charges constitutes "manifest injustice" requiring withdrawal of the plea even after sentencing, *Shaffer* at 593, n. 2, an esoteric explanation of the elements of the crime is not necessarily a prerequisite to constitutional validity of a guilty plea in all circumstances. The "true constitutional imperative is that the defendant receive 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Shaffer* at 595, *quoting Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108, 114 (1976). Whether notice has been adequately imparted may be determined from the totality of the circumstances attendant upon the plea, *Shaffer* at 595, *see also Commonwealth v. Morales,* 452 Pa. 53, 305 A.2d 11 (1973), *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A.2d 196 (1968). Therefore, in addressing appellant's claim of manifest injustice requiring withdrawal of the plea, *Commonwealth v. Starr,* 450 Pa. 485, 490, 301 A.2d 592, 595 (1973) we will review all circumstances surrounding the entry of the plea.

A lengthy colloquy took place which included but was not limited to: the age and educational background of the defendants; whether defendants were under the influence of alcohol or drugs; the rights waived by pleading guilty including the presumption of innocence, the right to a jury trial by members of the community and the need for a unanimous verdict; the factual basis for the plea; the nature of the charges; the terms of the plea bargain agreement and the permissible range of sentences; the defenses and motions waived by pleading guilty and grounds for appeal. The appellant was repeatedly reminded that only if he were entering the plea voluntarily could the plea be accepted by the court, and that he was free to change his mind up until the court actually accepted the plea without suffering recriminations.

During the colloquy this specific exchange established the charges in question and the factual basis for the charges:

THE COURT: You're both charged with on January 16, 1979, that you did cause serious bodily injury to John Charles Kenvin and that you did take his life, for you are charged with Murder.

. . . .

[Asst. District Attorney]: Your honor, the information charges Murder, which the Commonwealth has certified will rise no higher than third degree from the facts that on the early morning hours of January 16, 1979, near White Haven, Pennsylvania, in Glen Oakes Section, the Defendants caused the death of the victim, John Charles Kenvin, by beating him and, in addition, the robbery charge is because the Defendants took a wallet and watch from the victim.

THE COURT: Gentlemen, those are the offenses to which you want to plead guilty. Do you understand those, are there any questions about the nature of those charges, . . . ?

. . . .

THE COURT: Mr. Martinez?

DEFENDANT MARTINEZ: No, sir.

Evidence taken by the court in the presence of appellant during the guilty plea proceeding established the following. The victim died as a result of severe head injuries caused by repeated forceful blows to the head with a blunt object. He was found at his family's cottage at Glen Oakes, a development near White Haven, Pennsylvania and was pronounced dead at a local hospital. The victim customarily carried a wallet and wore a gold-colored wristwatch which were never recovered. He was reputed to be a homosexual known in the area as "Uncle Tim" who had a habit of cruising in his car and picking up young men. Latent thumb prints of each of the defendants was found on the passenger side door of the victim's car.

The beating occurred between 4:00 A.M. and 8:00 A.M. on January 16, 1979. A man traveling to work at about 6:15 A.M. that morning picked up the co-defendants on the

highway in the crime vicinity and gave them a ride to Hazelton where they resided.

The defendants, each age 17 at the time of the crime, admitted the beating to two young girls who were each dating one of the defendants. Both testified that appellant's co-defendant said they killed a man, appellant adding that they did it by hitting him over the head. Appellant later showed a gold-colored watch, indicating it was "Uncle Tim's" and that they "did it" for money. Appellant's co-defendant also gave a statement to police admitting the crime and implicating appellant.

■ In a case where ample, competent evidence in support of a guilty plea is made a matter of record, allegations of manifest injustice arising from the guilty plea must go beyond a mere claim of lack of technical recitation of the legal elements of the crimes. *Shaffer* at 596, *Cf. Commonwealth v. Morales,* 452 Pa. 53, 305 A.2d 11 (1973).

Here, detailed testimony by a forensic pathologist was given in the presence of the defendant[2] regarding the nature of the wounds inflicted.

Examination of the body at that time showed multiple head injuries, so I directed the body to be taken to the morgue and proceeded with the plans to do an autopsy and notify all appropriate law enforcement agencies.

. . . .

There was evidence of five blows to the head resulting in lacerations of the scalp with extensive bleeding over the face.

. . . .

**2.** Also presented in the presence of the appellant at the preliminary hearing was the following testimony by the same witness attesting to the severity of the beating:

These wounds were inflicted with great force because they fractured the skull. As a matter of fact they fractured the sphenoid bone which is the strongest, hardest bone at the base of the skull and the fracture went right through the big bone at the base of the skull. So, a lot of force was applied with some object delivered to the head to break the bones of the skull.

. . . These lacerations ranged from one inch to three inches. There was a separation of the soft tissues of the scalp with abrasion of the edges of the separated portions of the skin.

. . . .

. . . [T]here was a fracture of the right ulna and the radius, which are the two bones that go from the elbow to the wrist with marked swelling and purplish discoloration of the tissue.

There was reddish discoloration of both eyes, reddish purple discoloration, literally, black eyes. Then there was evidence of blows to the testicles with hemorrhage into the soft tissues of the testicles. There was abrasions [sic], loss of the upper layers of skin on both sides and on the buttocks.

. . . [T]he severe injuries inside the body were confined to the brain, where there was lacerations [sic] under the scalp outside of the cranial bone. There were hemorrhages under the cranial bones. Fractures of the cranial bones, and then there was contusions [sic] of the brain itself.

. . . .

Mr. Kenvin actually died of cardiac arrest. His heart stopped beating because of the multiple blows to the head and injuries to the brain, plus the contributing shock from the fracture of the right arm and radius.

▉ We are of the opinion that this graphic illustration of the nature of the injuries as presented by the pathologist in the presence of appellant demonstrated malice. It is now axiomatic that such evidence of repeated forceful use of a deadly instrument on the head, a vital part of the body, establishes malice. We need not explain the equation to the accused in technical terms when there is evidence understood by the accused attesting to the act itself. As stated in *Shaffer,* "we can think of no more vivid method of demonstrating the concept [of malice] than by laying before the [accused] the evidence which constitutes malice as it is defined by the law. A legal definition of the term, as it is

'understood' by the legally trained, is likely to be closer to being mere words rather than a meaningfully understood explanation of that term..." *Id.*, 498 Pa. at 351, 446 A.2d at 595.

The cumulative evidence of theft in light of the abundant evidence of violence establishes robbery making it virtually implausible that appellant believed he was pleading guilty to a mere theft without violence and we are satisfied that the appellant understood that the use of force as an element of robbery was applicable in his case and was a part of the guilty plea.

■ Therefore, under these circumstances and based upon this record, appellant's allegation is insufficient to establish manifest injustice. We are satisfied that the appellant received sufficient knowledge of the charges as established by (1) the court's and assistant district attorney's statement of the charges and the factual bases for them and (2) the taking of testimony establishing all elements of the crimes including the element of malice.

Accordingly, the lower court's denial of relief on this argument is affirmed.

■ Appellant next alleges an abuse of discretion by the lower court in denying a hearing on his allegations of manifest injustice resulting from improprieties during the course of prosecution centering on the testimony by the two young women in support of appellant's guilty plea. Appellant's *pro se* petition alleged that the District Attorney solicited false testimony from the girls, threatening them with prosecution of a car theft charge if they did not cooperate and promising probation on the charge if they did. It was also alleged that appellant's trial counsel were aware of this solicitation of false testimony.

When presented with these allegations, the court below ordered the appointment of new counsel and issued a Rule on the Commonwealth to Show Cause Why a Hearing Should Not Be Granted on appellant's allegations. A hearing on the Rule took place on February 5, 1980 where the

court heard new counsel's assessment of the strength of the allegations. Appointed counsel outlined his efforts on behalf of appellant and concluded that should a hearing take place his only evidence would be the bare allegations of appellant. As recorded at the hearing on the Rule, counsel stated: "I have interviewed the girls. They have indicated if they would appear today in person, under oath before Your Honor, their testimony would not change. They would indicate they have never received any threats, promises, or inducements from anyone to tell any lies or perjure themselves."

In light of this representation, the lower court's denial of a hearing was properly within the bounds of discretion.[3] Accordingly, we affirm the denial of a hearing.

Affirmed.

McDERMOTT, J., joins the Majority Opinion and files a Concurring Opinion.

McDERMOTT, Justice, concurring.

I concur in the majority opinion.

The Court again finds itself compelled to engage in an exhaustive analysis of the requirements of the guilty plea colloquy. Our observations in *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982), are, unfortunately, as apt today as they were when *Shaffer* was decided:

A review of our many decisions in the guilty plea area shows that these standards have generated confusion where there should be clarity. The instant case further illustrates this point.

Defendants appealing the denial of petitions to withdraw their guilty pleas have consistently mounted two-fold attacks on the guilty plea colloquy, challenging both its content and the subjective ability of the defendant to

---

**3.** Rule 321 of the Rules of Criminal Procedure provides that on a motion challenging the validity of a guilty plea, the "court *may* schedule a hearing on the motion."

grasp the gravity and complexity of the procedures. This course suffers from debilitating illogic.

It is indisputable that a defendant must be fully aware of any rights that he purports to waive before such a waiver can be accepted. Nevertheless, . . . some credibility must be placed in the concept that defense counsel will enlighten his client as the four elements set forth in [*Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974)] . . . There is no requirement that a defendant be given what amounts to a short law school course on the nature of the charges he faces. This court would do well to consider an alternative to our present appeal challenging the substance of the colloquy, leaving for our review those cases which raise valid constitutional questions.

498 Pa. 355–56, 446 A.2d at 597–98 (McDermott, J., concurring) (footnotes omitted). For the benefit of the bench, the bar and the citizens of the Commonwealth, this Court is obliged to articulate a workable standard guilty plea colloquy. "[T]he evolving patchwork of colloquy requirements places an onerous burden of uncertainty on the trial court, and affords numerous grounds for challenges to the content of the colloquy." 498 Pa. at 356 n. 2, 446 A.2d at 598 n. 2. Until we devise a standard colloquy, uncertainty will persist in the lower courts, and our appellate dockets will be choked with the frivolous appeals which our present *ad hoc* system invites.