465 A.2d 1056

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Steve K. NELSON.**

Superior Court of Pennsylvania.

Argued Feb. 15, 1983.

Filed Sept. 16, 1983.

---

Joseph John Hylan, Assistant District Attorney, Norristown, for Commonwealth, appellant.

Marc Robert Steinberg, Souderton, for appellee.

Before CERCONE, President Judge, and JOHNSON and MONTEMURO, JJ.

MONTEMURO, Judge:

The Commonwealth takes this appeal from an order of the Court of Common Pleas, Montgomery County, granting the appellee's motion to withdraw his guilty plea subsequent to the imposition of sentence. The Commonwealth contends that the trial court abused its discretion in doing so, in that the record is devoid of circumstances which would substantiate a finding of manifest injustice. We agree, and reverse.

On May 2, 1981, the appellee, Steve K. Nelson, was arrested and charged with criminal attempt,[1] simple assault,[2] recklessly endangering another person,[3] indecent as-

1. 18 Pa.C.S.A. § 901.

2. 18 Pa.C.S.A. § 2701.

3. 18 Pa.C.S.A. § 2705.

sault,[4] indecent exposure,[5] burglary,[6] unlawful restraint[7] and criminal trespass.[8] These charges were filed against the appellee as a result of accusations made by a woman who identified the appellee as the man who had broken into her apartment and who had confronted and assaulted her. That same day, the appellee contacted an attorney, through a friend, and hired him to handle his defense.

On June 2, 1981, a preliminary hearing was held, where most of the crimes originally charged were dismissed.

On August 31, 1981, appellee pled guilty to criminal trespass before the Honorable Vincent A. Cirillo. He filled out a written form titled "Guilty Plea" containing five (5) pages of thirty-four (34) questions. He initialed each page, except page four (4), and along with his attorney, he signed it. In addition to the written form, the trial court conducted a colloquy basically to inquire whether the appellee understood the charges, the elements, whether he had sufficient time to answer the questions and whether he understood those questions. The appellee stated that he understood.

On September 10, 1981, the appellee filed a motion to withdraw his guilty plea, represented by different counsel. A hearing on this motion was held on December 11, 1981, with the Honorable Vincent A. Cirillo again presiding. On December 14, 1981, the trial court entered its order permitting the appellee to withdraw his guilty plea.[9] This appeal followed.

**4.** 18 Pa.C.S.A. § 3126.

**5.** 18 Pa.C.S.A. § 3127.

**6.** 18 Pa.C.S.A. § 3502.

**7.** 18 Pa.C.S.A. § 2902.

**8.** 18 Pa.C.S.A. § 3503.

**9.** The Honorable Vincent A. Cirillo granted the order but was unavailable to write an opinion setting forth his reasons for allowing the appellee to withdraw his guilty plea. The Honorable Richard Lowe, P.J., undertook that assignment but refused to analyze or question the trial judge's use of discretion in this instance. Thus, we are left

Appellee argues that his plea was involuntary because he never once failed to assert his innocence to his attorney, that his counsel was unprepared to go to trial because of his failure to interview witnesses in order to pursue appellee's purported alibi, and that counsel misled him, up until the day he pled guilty, into believing that his case would be tried. Appellee says that his attorney scared him into pleading guilty. Appellee also attacks the constitutional validity of the written guilty plea form which he initialed and signed, and which he contends is insufficient without a full scale verbal colloquy conducted by the court pursuant to *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). In appellee's view, the verbal exchange is the only means by which a court can discern whether or not a plea is knowing and voluntary, and that, in any event, in this case, he did not complete the written form. He left one question unanswered.[10]

It is well settled in Pennsylvania that to properly withdraw a guilty plea after sentence, a petitioner must prove to the trial court that withdrawal is necessary to correct a manifest injustice. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973). Examples of manifest injustice contained in The Standards Relating to Pleas of Guilty (2d ed. 1980), Standard 14–2.1(b)(ii)(A) and (C) have been approved in this Commonwealth.[11] *Commonwealth v.*

without the benefit of a statement of reasons by the trial court in support of the order.

**10.** The appellee did not answer question 15 which read: Do you admit to committing the crimes to which you are pleading guilty and to the legal elements explained to you making up those crimes? This omission, however, was fully considered by the court during the colloquy where the appellee admitted that he did commit the crimes after being informed as to the legal elements involved. See p. 1059 infra.

**11.** Standard 14–2.1(b)(ii) provides:
   (ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves, for example, that:
   (A) the defendant was denied the effective assistance of counsel guaranteed by constitution, statute, or rule;
   (B) the plea was not entered or ratified by the defendant or a person authorized to so act in the defendant's behalf;

*Shaffer*, 498 Pa. 342, 346 n. 2, 446 A.2d 591, 593 n. 2 (1982). These standards require withdrawal of a guilty plea "to correct a manifest injustice" where the defendant has been subjected to ineffective assistance of counsel and where the plea is involuntary or that it was entered without knowledge of the charge which, *sub judice*, appellee argues serves as a basis for the withdrawal of his guilty plea. Our task is to review the record to determine whether or not there are sufficient facts to support these justifications.

■ First, with recent case law in mind, we have no difficulty in concluding that the extensive written guilty plea form *and* the supplemental oral colloquy were more than adequate to confirm the trial court's belief that the appellee's plea of guilty was voluntary. See, *Commonwealth v. Martinez*, 499 Pa. 417, 453 A.2d 940 (1982); *Commonwealth v. Shaffer, supra.* Accord, *Commonwealth v. Smith*, 498 Pa. 661, 450 A.2d 973 (1982). During the colloquy, the court inquired into the following area:

THE COURT: How far did you go in school?

MR. NELSON: Twelfth grade, sir.

THE COURT: What school did you go to?

MR. NELSON: North Penn High School.

THE COURT: Do you read and write the English language?

> (C) the plea was *involuntary,* or was entered *without knowledge* of the charge or knowledge that the sentence actually imposed could be imposed;
> (D) the defendant did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement; or
> (E) the defendant did not receive the charge or sentence concessions contemplated by the plea agreement, which was either tentatively or fully concurred in by the court, and the defendant did not affirm the plea after being advised that the court no longer concurred and after being called upon to either affirm or withdraw the plea; or
> (F) the guilty plea was entered upon the express condition, approved by the judge, that the plea could be withdrawn if the charge or sentence concessions were subsequently rejected by the court. American Bar Association Standards for Criminal Justice, Pleas of Guilty (2d ed. 1980) (Emphasis supplied).

MR. NELSON: Yes, sir.

THE COURT: Do you understand me as I'm speaking with you here today?

MR. NELSON: Yes, sir.

THE COURT: Do you understand Senator Rovner as he speaks with you?

MR. NELSON: Yes, sir.

THE COURT: Did you have enough time to go over the colloquy with him?

MR. NELSON: Yes.

THE COURT: Is that your initials at the bottom of the page?

MR. NELSON: Yes, sir.

THE COURT: Is that your signature on the last page?

MR. NELSON: Yes, sir.

THE COURT: Did you understand all the questions that were asked there?

MR. NELSON: Yes, sir.

THE COURT: Do you have any questions to ask me, your lawyer, or the district attorney at this time?

MR. NELSON: No, sir.

THE COURT: Do you understand what you're pleading guilty to, criminal trespass?

MR. NELSON: Yes, sir.

THE COURT: What is the—

MRS. KILLINGER: I'll read the criminal trespass section to the defendant, Your Honor.

Criminal trespass is found in Section 3503 of the Crimes Code, it's important that you understand the nature of that crime.

A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied por-

tion thereof; or breaks into any building or occupied structure or separately secured or occupied portion thereof.

It's the Commonwealth's position in this case that on May 2nd you broke into Carin O'Neill's apartment.

THE COURT: Do you understand that?

MR. NELSON: Yes, sir.

THE COURT: You did so without her permission?

MR. NELSON: Yes, sir.

THE COURT: All right. I find this defendant has intelligently and voluntarily entered his plea of guilty. D-1 is admitted in the record.

What's that, a misdemeanor of the—

MRS. KILLINGER: No, Your Honor, it's a felony two, Your Honor.

THE COURT: You could be sentenced up to ten years in prison for this.

Do you understand that?

MR. NELSON: Yes.

MRS. KILLINGER: Should I read the facts into the record, Your Honor?

THE COURT: I think you already gave them, didn't you?

MRS. KILLINGER: I want to make sure that we have the—I would like to get time.

THE COURT: All right, go ahead.

MRS. KILLINGER: At 3:30 a.m. on May 2nd, 1981, and that's the Woods Apartment which is at 2115 Lincoln Drive in Upper Dublin Township, which is in Montgomery County. And it was owned by a Carin—rented by a Carin O'Neill who did not give Mr. Nelson permission to be there then or at any time.

(N.T. 3–6)

Thus, the written form and the oral colloquy inquired into the following areas: the age and educational background of the appellee; his mental health; his right to a jury trial; the

right to a unanimous verdict; that he could participate in the selection of jurors chosen from the community; the presumption of innocence and the Commonwealth's burden to prove his guilt beyond a reasonable doubt; the factual basis for the plea; the nature of the charges; the terms of the plea bargain agreement; that the court was not bound by those terms; permissible range of sentences; the motions waived by pleading guilty and grounds for appeal. Since we must consider the totality of the circumstances, *Martinez, supra; Shaffer, supra,* it is clear that the information elicited by the form and the colloquy was over and above the requirements set forth in the Comment to Pa.R. Crim.P. 319 and *Commonwealth v. Ingram, supra.*

Second, the question concerning the ineffectiveness of counsel must be analyzed in a two step process. Our first inquiry is whether the underlying claim is of arguable merit, and, if so, whether there was some reasonable basis for counsel's action designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

The testimony presented at the hearing on the appellee's motion was conflicting. The appellee testified that he never once intended to plead guilty. However, when he found out on August 31, 1981, that his attorney wanted him to plead guilty, he was "shocked" and "scared" into doing so. He felt he had no other choice since his witnesses were not at the courthouse and his attorney was obviously unprepared. He further testified that he was told by his attorney to fill in the written guilty plea form, and that the questions he did not answer, the attorney dictated to him the appropriate response. During the colloquy, the appellee testified that he still did not want to plead guilty but felt pressured into giving the right answers.

The attorney disagreed. He testified that the appellee was fully aware that he was going to plead guilty on August 31, 1981, and that he did so voluntarily. The

attorney also felt that the recommended three (3) years probation under the plea agreement was excellent considering the circumstances of this particular case; especially the victim's solid identification of the appellee.

■ Since the appellee's testimony was found incredible by the trial judge,[12] the appellee has failed to establish that his counsel was ineffective. In any event, there is nothing in the appellee's testimony to indicate that counsel did not conduct an investigation of his witnesses or that he did not determine the validity of appellee's alibi. The attorney said that he did those things and found that a defense based on those witnesses would not be effective. More importantly, the attorney testified that the victim was an excellent witness who unequivocally identified the appellee as the perpretrator of the crime. This statement was not challenged by the appellee, and, as a matter of fact, the appellee's counsel at the hearing on his motion to withdraw, admitted that the victim "was a good witness." In light of these factors, and after due consideration of the entire record, we hold that counsel was not ineffective.

■ We hold that the trial court abused its discretion in granting the appellee's petition to withdraw his guilty plea.

Order reversed.

12.　THE COURT: But you are asking me to believe your client and disbelieve Mr. Rovner, is that correct?

MR. STEINBERG: Well, if it please the Court, I am asking you to listen to what testimony you have and make a determination.

THE COURT: Mr. Rovner is not a criminal. He is a member of the bar. He is more credible than your client. Your client either lied to me then or he is lying to me now and regardless of what the reason was he lied then, suppose Mr. Rovner asked him to lie to me, he is a liar then or a liar now.

MR. STEINBERG: I wouldn't even suggest that Mr. Rovner asked him to lie. I would not accept that as an answer.

THE COURT: Well, your client didn't tell me the truth then when I asked him these questions for whatever reason. So when you ask me to test credibility I say this guy has already lied to me once. I have never had Senator Rovner lie to me.

(N.T. 100.)