J. S17002/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANGEL ULICES MOLINA, | : | |
| | : | |
| Appellant | : | No. 1849 WDA 2013 |

Appeal from the Judgment of Sentence February 12, 2008
In the Court of Common Pleas of Allegheny County
Criminal Division No(s).: CP-02-CR-0005565-2006

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED APRIL 28, 2015**

Appellant, Angel Ulices Molina, appeals *nunc pro tunc* from the judgment of sentence entered in the Allegheny County Court of Common Pleas after he pleaded guilty to murder of the third degree and endangering the welfare of a child.[1] Appellant claims he is entitled to a post-sentence withdrawal of his guilty plea and the aggregate sentence of twenty to forty years' imprisonment was manifestly excessive.[2] We affirm.

The trial court has summarized the factual and procedural background of this appeal.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 4304.

[2] We have reordered Appellant's arguments for the purposes of this appeal.

On or about October 15th, 2007, [Appellant] pled guilty to 3rd degree Homicide and Endangering [ ] the Welfare of a Child for the death of his 21-month old son.[3] The child was found dead on April 1st, 2006 from blunt force trauma to his abdomen. An autopsy also revealed fractures to the child's ribs as well as blunt force trauma to the child's face. After the autopsy, [Appellant] was taken to the homicide division, waived his ***Miranda***[4] Rights and admitted to having struck the child five days before the infant's death.[5]

The Allegheny County Medical Examiner determined that the force of the blow inflicted on the child caused his intestines to strike the back of his spinal column, which lacerated his organs and caused internal bleeding.

The child's mother, a co-defendant, charged with Endangering the Welfare of a Child, knew [Appellant] had struck his child. . . . [T]he child's mother [gave statements] that the child made a bowel movement on [Appellant]'s couch. This incident enraged [Appellant], who struck the child repeatedly. The child could not eat because of the injuries inflicted upon him by [Appellant. Appellant] had, at one point prior to the child's death, attempted to funnel V8 juice down into the child's stomach. The child subsequently vomited. After one or two failed attempts to get the child to eat, the child died on April 1st, 2006. The medical examiner also determined that the child could have been saved by prompt medical care.

---

[3] Appellant's plea did not include an agreement on sentencing. Appellant was nineteen years old at the time of the child's death.

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[5] Appellant was charged on April 2, 2006, with one count of homicide, generally, ***see*** 18 Pa.C.S. § 2501, and one count of endangering the welfare of a child, graded as a misdemeanor of the first degree.

[Appellant], an illegal immigrant whose native tongue is Spanish, had an interpreter with him at the time of his plea hearing. He swore under oath that he understood English, and that he was able to rely on the court interpreter for anything he did not understand. Throughout the proceedings, [Appellant] addressed the court in very functional English. He verified that the summary given by the District Attorney was correct, that he used to drink, and that the child's mother did not actually see him hit his child. [Appellant's plea counsel] stated that she felt confident in [Appellant]'s ability to fill out his colloquy forms, to understand the terms of his guilty plea, and that he had answered the questions on his colloquy form truthfully.

On February 12, 2008, [Appellant] was sentenced to 20-40 years in prison for 3rd Degree Homicide and [no further penalty for] Endangerment in the Welfare of a child. On February 19th, post-sentencing motions were filed, seeking a modification of the sentence [and withdrawal of the plea]. A clerical error that listed the sentence as 10-20 years was corrected[, and the post-sentence motions were denied]. No appeal was taken challenging the sentence, and [Appellant, on July 11, 2008,] then petitioned for relief under the Post Conviction Relief Act [(PCRA), 42 Pa.C.S. §§ 9541-9546]. The Court appointed Matthew Debbis, Esquire, as counsel for [Appellant]. After reviewing all the records, appointed counsel filed a timely **Turner/Finley**[6] no merit letter, and withdrew from representing Mr. Molina. The trial court reviewed the **Turner/Finley** Motion and brief and Court records then denied the PCRA Motion.

[Appellant] appealed the denial for relief at No. 1645 WDA 2011, and the Superior Court vacated the trial court order and remanded for an evidentiary hearing to

---

[6] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

determine whether [Appellant] asked trial counsel to file a direct appeal.

The trial court appointed Scott Coffey, Esquire, to represent [Appellant] in the PCRA evidentiary hearing scheduled for 10/23/13. On that day, [plea] counsel conceded she did not file the direct appeal, and the court reinstated [Appellant]'s direct appeal rights, *nunc pro tunc*.

Trial Ct. Op., 11/20/14, at 2-4 (record citations and footnotes omitted).

Appellant filed a timely notice of appeal and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion.

Appellant presents two questions in this appeal, which we have reordered as follows:

[ ] DID THE TRIAL COURT ERR IN DENYING APPELLANT'S REQUEST TO WITHDRAW HIS GUILTY PLEA SINCE APPELLANT IS INNOCENT OF THE INSTANT CRIMES, AND THE PLEA WAS INVOLUNTARY SINCE (A) APPELLANT, WHO[SE] FIRST LANGUAGE IS SPANISH, WAS NOT ADVISED OF THE ELEMENTS OF THE CRIME, MURDER 3, TO WHICH HE WAS PLEADING AND APPELLANT WAS NOT ADVISED OF AND DID NOT UNDERSTAND THE CONCEPT OF "MALICE", AN ESSENTIAL ELEMENT OF MURDER 3, AND, (B) THE TRIAL COURT DID NOT ADVISE APPELLANT THAT HE COULD BE DEPORTED BACK TO MEXICO FOR PLEADING TO THESE CRIMES?

[ ] DID THE TRIAL COURT ERR IN DENYING APPELLANT'S POST SENTENCING MOTIONS SINCE HIS 20-40 YEAR SENTENCE OF IMPRISONMENT FOR MURDER 3 WAS MANIFESTLY EXCESSIVE IN LIGHT OF HIS GUILTY PLEA RATHER THAN PROCEEDING TO TRIAL, AND HIS ACCEPTANCE OF RESPONSIBILITY AND EXPRESSION OF REMORSE FOR HIS CRIME?

Appellant's Brief at 3.

Appellant first contends the trial court erred in denying his post-sentence request to withdraw his guilty plea. *Id.* at 20-22. He asserts actual innocence to murder of the third degree and claims his plea was unknowing because the trial court failed to provide a Spanish-speaking interpreter. Appellant also claims the plea colloquy was inadequate because it failed to apprise him of the elements of that crime, in particular, malice. Lastly, Appellant asserts the plea colloquy was defective because he was not informed of the possibility of deportation. No relief is due.

"When considering the propriety of a trial court's denial of a motion to withdraw a guilty plea, we are bound by the determination of that court unless we find that it committed an abuse of discretion." ***Commonwealth v. Mobley***, 581 A.2d 949, 952 (Pa. Super. 1990) (citation omitted).

> Post-sentence motions for withdrawal are subject to higher scrutiny [than presentence motions] since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

***Commonwealth v. Broaden***, 980 A.2d 124, 129 (Pa. Super. 2009) (citations and punctuation omitted). "[W]here the totality of the circumstances establishes that a defendant was aware of the nature of the charges, the plea court's failure to delineate the elements of the crimes at

the oral colloquy, standing alone, will not invalidate an otherwise knowing and voluntary guilty plea." **Commonwealth v. Morrison**, 878 A.2d 102, 107 (Pa. Super. 2005) (*en banc*) (citing, *inter alia*, **Commonwealth v. Martinez**, 453 A.2d 940, 942-44 (Pa. 1982)).

> A defendant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Pa.R.Crim.P. 720(A)(1), (B)(1)(a)(i). Failure to employ either measure results in waiver. Historically, Pennsylvania courts adhere to this waiver principle because it is for the court which accepted the plea to consider and correct, in the first instance, any error which may have been committed.

**Commonwealth v. Lincoln**, 72 A.3d 606, 609-10 (Pa. Super. 2013) (some citations and punctuation omitted), *appeal denied*, 87 A.3d 319 (Pa. 2014).

As to Appellant's assertion that his plea was unknowing because of possible language barriers, our review reveals the following. Appellant confirmed he was able to read, write, and understand the English language in his written plea colloquy. Written Guilty Plea Explanation of Def.'s Rights, 10/15/07, ¶ 4 ("written colloquy"). During the oral colloquy by the trial court, the presiding judge twice noted that a Spanish interpreter was available and advised Appellant to "[t]ell us to stop" if he did not understand anything. N.T., 10/15/07, at 2. The court asked Appellant if he understood English, and Appellant responded, "Yes." **Id.** Appellant did not stop the proceedings based on a language barrier. The transcript also indicates the court used the interpreter only when it clarified Appellant's history of mental

health treatment and whether that history affected his ability to enter the underlying plea. *Id.* at 22-23.

Appellant was also able to respond to the Commonwealth's lengthy recitation of the factual basis of the plea. *Id.* at 8-17. He admitted striking the child, but asserted his girlfriend did not see him commit such acts. *Id.* at 15, 17. We further note the trial court discussed with plea counsel whether Appellant was able to understand the written colloquy. *Id.* at 6. Plea counsel averred she sat with Appellant while completing the written colloquy and observed he had some difficulty understanding certain words, such as "threat." *Id.* She stated, however, that she was "confident to a certain extent" that he understood the contents of the questions asked of him. *Id.* at 6-7. Thus, having reviewed the record, we discern no abuse of discretion in the trial court's determination that the alleged language barrier did not affect the entry of Appellant's plea.

As to Appellant's assertion that he was not apprised of the elements of murder of the third degree, our review reveals neither the written colloquy, nor the trial court's oral colloquy expressly stated the elements of that offense or defined malice. Nevertheless, Appellant acknowledged in the written colloquy that he "discussed with [plea counsel] the elements of each charged offense[,]" "the factual basis of each charged offense[,]" and "how the facts in [his] case prove the elements of each charged offense." Written Colloquy, at ¶¶ 6-8. At the guilty plea hearing, the Commonwealth informed

Appellant the plea was "to Third Degree Murder," and summarized the factual basis for the plea in detail. N.T., 10/15/07, at 3, 8-14. That summary included allegations Appellant struck his twenty-one month old child with sufficient force to cause "the child's intestines to strike the back of the spinal column" and lacerate the organs. *Id.*, at 10-11. The child subsequently bled to death. *Id.* at 11. Appellant did not deny the substance of the Commonwealth's allegations. *Id.* at 14-17.

It is undisputed that the written and oral colloquies in this case were inadequate because they did not define third-degree murder as a killing committed with malice or the term malice. Nevertheless, the trial court's failure to explain the elements of the offense on the record does not constitute *per se* prejudice amounting to manifest injustice. *See Martinez*, 453 A.2d at 942-44; *Broaden*, 980 A.2d at 129; *Morrison*, 878 A.2d at 108-09. In light of Appellant's acknowledgement that plea counsel explained the elements of the offense to him and our review of the plea proceeding as a whole, we are constrained to conclude that the trial court did not err or abuse its discretion when denying Appellant's post-sentence request to withdraw his plea.[7]

---

[7] Our case law mandates that we review the totality of the circumstances of a guilty plea to discern whether a defendant understood the elements of the offense to which he was pleading guilty. *See Martinez*, 453 A.2d at 942-44; *Broaden*, 980 A.2d at 129; *Morrison*, 878 A.2d at 108-09. However, our courts and the interests of justice are better served when the trial judge apprises the defendant of "the nature of the charge to which he or she is

Appellant's final challenge to the validity of his guilty plea is that he was not apprised of the possibility of deportation. For the reasons that follow, we are compelled to conclude this claim is waived.

Although not discussed by Appellant or the trial court, we note that before 2010, our courts regarded deportation as a "collateral consequence" of a guilty plea. *See Commonwealth v. Frometa*, 555 A.2d 92, 93 (Pa. 1989), *abrogated by Padilla v. Kentucky*, 559 U.S. 356 (2010). Under *Frometa*, "a defendant's lack of knowledge of the collateral consequences of pleading guilty d[id] not undermine the validity of his guilty plea." *Id.* Subsequently, on March 31, 2010, the United States Supreme Court decided *Padilla*, which addressed counsel's duties to advise her client on adverse immigration consequences of a plea. *See Padilla*, 559 U.S. at 369. As we discussed in *Commonwealth v. Descardes*, 101 A.3d 105 (Pa. Super. 2014) (*en banc*), *Padilla* held "that the Sixth Amendment requires defense counsel to advise defendant about the risk of deportation arising from a guilty plea. This particular claim of ineffective assistance of counsel did not exist until 2010 when the Supreme Court decided *Padilla*." *Descardes*, 101 A.3d at 108-09. *Padilla* thus abrogated the narrow holding of *Frometa* that deportation is a collateral consequence of a plea. *See Commonwealth v. Abraham*, 62 A.3d 343, 347 (Pa. 2012).

---

pleading guilty" on the record. *See* Pa.R.Crim.P. 590 *cmt.* Conducting a complete on-the-record colloquy is especially advisable where English is not the defendant's primary language.

Instantly, on February 19, 2008, plea counsel filed a timely post-sentence motion on Appellant's behalf, asserting he "alleged that his plea was not knowingly nor intelligently made[, and he] now maintains that he is innocent of these charges and wishes to proceed to trial."  Appellant's Post Sentencing Mot., 2/19/08, at 2-3.  At that time, **Frometa** stated the governing law.   The United States Supreme Court did not decide **Padilla** until more than two years after Appellant entered his plea and plea counsel filed the post-sentence motion.   Although **Padilla** was decided during Appellant's five-year effort to have his direct appeal reinstated through the PCRA, he did not request leave to amend or file a supplemental post-sentence motions *nunc pro tunc*.  Instead, Appellant raised this issue for the first time in his Pa.R.A.P. 1925(b) statement.

Given the unique circumstances of this case, we conclude Appellant did not preserve his claim his plea was invalid due to the trial court's failure to advise him of the possibility of deportation.   Therefore, we decline to entertain this argument for the first time in this direct appeal.  **See Lincoln**, 72 A.3d 606, 609-10; **Commonwealth v. Evans**, 901 A.2d 528, 534 (Pa. Super. 2006).  Thus, no relief is due.[8]

---

[8] In any event, we note **Padilla** concerned the effective assistance of counsel and no Pennsylvania court has held that **Padilla** applies to the adequacy of the trial court's plea colloquy.  Therefore, **Padilla** claims should generally be deferred until a post conviction relief proceeding.  **See Commonwealth v. Holmes**, 79 A.3d 562, 563 (Pa. 2013).  We note, however, some of our trial courts have included notice of possible

Appellant, in his second question presented, challenges the discretionary aspects of the twenty-to-forty year sentence imposed on the count of murder of the third degree.[9] Appellant has complied with the procedural rules for preserving a discretionary sentencing claim by (1) securing permission to appeal *nunc pro tunc*, (2) preserving his sentencing claim in the post-sentence motions filed by plea counsel, and (3) including in his brief a Pa.R.A.P. 2119(f) statement. **See Evans**, 901 A.2d at 533-34. Accordingly, we proceed to consider whether Appellant's claims raise a substantial question. **See id.**

The following principles are well settled:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.
>
> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. An appellant must articulate the reasons the sentencing court's actions violated the sentencing code.

immigration consequences in their written plea colloquies. In the instant case, the written colloquy did not include such notice, nor were immigration consequences discussed during the oral colloquy.

[9] As noted above, Appellant entered an "open" plea to the charges. Therefore, his challenge to the discretionary aspects of the sentence are cognizable. **See Commonwealth v. Dalberto**, 648 A.2d 16, 19-21 (Pa. Super. 1994). We reiterate that the trial court imposed no further penalty on the misdemeanor count of endangering the welfare of a child.

\*    \*    \*

> When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

**_Commonwealth v. Moury_**, 992 A.2d 162, 170-71 (Pa. Super. 2010) (citations and punctuation omitted).

Appellant, in his Pa.R.A.P. 2119(f) statement, alleges: (1) the "20-40 year sentence was manifestly excessive[;]" (2) the trial court "did not provide sufficient reasons for the excessive sentence[;]" and (3) the trial court inadequately considered mitigating factors, such as his acceptance of responsibility and decision to plead guilty. Appellant's Brief at 12-13. We also note the suggested standard range minimum sentence was six years to the statutory limit of twenty years.[10] Thus, Appellant's twenty-to-forty year sentence at the upper end of the standard range.

---

[10] Appellant had a prior record score of zero. The offense gravity score for murder of the third degree was fourteen. The maximum penalty for murder of the third degree was forty years. 18 Pa.C.S. § 1103(d).

Following our review, we conclude that Appellant has not established a substantial question warranting review. **See Moury**, 992 A.2d at 171. In any event, having reviewed the entire record, we decline to disturb the assumption that the trial court considered Appellant's mitigating circumstances when it reviewed the presentence investigation report. **See id.**; **accord Commonwealth v. Hunzer**, 868 A.2d 498, 514 (Pa. Super. 2005); **see also** N.T., 2/12/08, at 4 (indicating trial court reviewed the presentence investigation report). Moreover, although the trial court's statement of reasons for the sentence was brief, the maximum sentence imposed fell within the standard suggested range of the Sentencing Guidelines. Thus, the court was not required to provide a detailed statement of reasons for its sentence.[11] **See Hunzer**, 868 A.2d at 514. Accordingly, under the prevailing law, we have no basis to disturb the trial court's sentencing scheme.

Judgment of sentence affirmed.

---

[11] Although no appellate relief is due based on the Appellant's arguments, we note that there is no aggravated range sentence in the Sentencing Guideline for offenses with an offense gravity score of fourteen. Where, as here the Sentencing Guidelines suggest a wide range of standard minimum sentences, *i.e.*, from six years to twenty years, a more complete statement of reasons would assist this Court in reviewing the trial court's exercise of discretion when selecting a statutory maximum sentence.

We also note that it appears Appellant will not be eligible for early parole for deportation. **See** 61 Pa.C.S. § 6143(a)(1), (3). Thus, there is support for Appellant's contention that he will remain in in Pennsylvania custody until at least the expiration of the minimum sentence set by the trial court. Appellant's Brief at 22.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2015