COMMONWEALTH of Pennsylvania,
Appellee

v.

Robert LINCOLN, Appellant.

Superior Court of Pennsylvania.

Argued March 19, 2013.

Filed July 9, 2013.

Reargument Denied Sept. 16, 2013.

Jagan N. Ranjan, Pittsburgh, for appellant.

Peter Carr, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: GANTMAN, J., ALLEN, J., and OTT, J.

OPINION BY GANTMAN, J.:

Appellant, Robert Lincoln, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his negotiated guilty plea to attempted murder, aggravated assault, and robbery.[1] For the following reasons we hold Appellant's challenge to the validity of his guilty plea is not properly before us for review at this time. Accordingly, we affirm the judgment of sentence.

A prior memorandum decision of this Court sets forth the relevant facts of this case as follows:

> In November, 2002, [A]ppellant savagely beat a woman in whose home he was a guest, stole the proceeds of her social security checks, and left the victim and her two severely retarded children to fend for themselves. Unable to reach his sister by telephone, the victim's brother came to the victim's home, discovered her lying in a pool of blood, and her children sitting in a pile of their own feces.

*Commonwealth v. Lincoln,* No. 2746 EDA 2005, unpublished memorandum at 1, 905 A.2d 1045 (Pa.Super filed June 19, 2006). The recent trial court opinion continued as follows:

> On October 27, 2003, following a guilty plea colloquy, [Appellant] entered a negotiated plea of guilty to Robbery, Aggravated Assault, and Attempted Murder. This [c]ourt sentenced [Appellant] to sixteen (16) to forty (40) years for Attempted Murder and twenty (20) years['] probation for Robbery, to be served consecutive to the prison term.

---

1. 18 Pa.C.S.A. §§ 901 (2501 related), 2702, and 3701, respectively.

The sentence for Aggravated Assault merged with Attempted Murder for sentencing purposes. All other charges were *nolle prosequi*.

On November 23, 2003 [Appellant] filed a Notice of Appeal. On January 5, 2004, the appeal was withdrawn. On February 6, 2004, [Appellant] filed a Post Conviction Relief Act ("PCRA") Petition. Counsel was appointed, and on August 25, 2005, the Petition was dismissed.... [2] On September 9, 2005, [Appellant] filed a *pro se* Notice of Appeal. On June 19, 2006, the Pennsylvania Superior Court affirmed the [PCRA] court. On July 31, 2006, [Appellant] filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. On July 4, 2007, the Supreme Court denied [Appellant's] petition.[3]

... On July 10, 2012, this [c]ourt issued an order directing [Appellant] to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). [Appellant] did so on August 21, 2012....

(Trial Court Opinion, filed September 25, 2012, at 1).

Appellant raises three claims for our review:

DID THE TRIAL COURT ERR WHEN, DURING THE PLEA COLLOQUY, IT MISINFORMED [APPELLANT] OF THE CORRECT MAXIMUM SENTENCE FOR THE OFFENSES HE FACED, OVERSTATING THE MAXIMUM BY 20 YEARS, THEREBY VIOLATING PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 590 AND THE UNITED STATES CONSTITUTION AND CAUSING THE PLEA TO HAVE BEEN MADE UNKNOWINGLY AND INVOLUNTARILY IN VIOLATION OF THAT RULE AND THE CONSTITUTION?

DID THE TRIAL COURT ERR WHEN IT ENTERED A GUILTY PLEA ON THE CHARGES OF ATTEMPTED MURDER, DESPITE (I) [APPELLANT'S] DENIAL OF A FACT CRUCIAL TO ONE OF THE NECESSARY ELEMENTS OF THE OFFENSE AND (II) THE SUBMISSION OF FACTS ESTABLISHING AN AFFIRMATIVE DEFENSE TO THAT OFFENSE, THEREBY VIOLATING PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 590 AND THE UNITED STATES CONSTITUTION AND CAUSING THE PLEA TO HAVE BEEN MADE UNKNOWINGLY AND INVOLUNTARILY IN VIOLATION OF THAT RULE AND THE CONSTITUTION?

DID THE TRIAL COURT ERR WHEN IT ENTERED A GUILTY

---

2. On May 26, 2005, counsel filed a "no merit" letter pursuant to *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988), stating that the issues raised in Appellant's *pro se* PCRA petition were without merit and that counsel found no other meritorious issues to raise.

3. Appellant sought *habeas corpus* relief in the federal court. On August 24, 2011, the United States Court for the Eastern District of Pennsylvania granted Appellant a conditional writ of *habeas corpus*, concluding Appellant had been denied effective assistance of counsel on direct appeal because counsel had discontinued the appeal, without consulting Appellant, and stated Appellant would be released from custody unless his direct appeal rights were reinstated *nunc pro tunc* within 180 days. On October 17, 2011, Appellant filed an application with the Pennsylvania Superior Court to reinstate his previously discontinued direct appeal *nunc pro tunc*, which this Court granted on December 9, 2011, directing transmission of the certified record to this Court. Following some procedural housekeeping, this Court received the record on April 9, 2012.

PLEA WITHOUT INFORMING [APPELLANT] OF THE ELEMENTS OF THE OFFENSES OR OTHERWISE ENSURING THAT [APPELLANT] WAS SUFFICIENTLY AWARE OF THE NATURE OF THE OFFENSES, THEREBY VIOLATING PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 590 AND THE UNITED STATES CONSTITUTION AND CAUSING THE PLEA TO HAVE BEEN MADE UNKNOWINGLY AND INVOLUNTARILY IN VIOLATION OF THAT RULE AND THE CONSTITUTION?

(Appellant's Supplemental Brief at 4).

We outline Appellant's issues as one. First, Appellant complains the court misstated the potential maximum sentence Appellant faced when the court stated it could impose a sentence of eighty-five (85) years' incarceration or a *de facto* life sentence. Appellant complains the court failed to consider the merger of two of the offenses, aggravated assault and attempted murder, which would have resulted in a proper maximum sentence of only sixty-five (65) years' incarceration.

Next, Appellant argues the trial court should not have accepted his plea to attempted murder when Appellant contested an element of his guilty plea, *i.e.,* using the radio to strike the victim. Appellant claims he did not commit attempted murder because he did not have specific intent to kill as shown by his denial of the use of the radio. He also maintains the facts of this case support a charge of attempted manslaughter, not attempted murder, because he attacked the victim only in response to her assault.

Finally, Appellant asserts his guilty plea was not knowing, intelligent, or voluntary because the trial court did not explain to Appellant the elements of the offenses to which he plead guilty. Appellant claims

the court could have stated on record the elements of the offenses, or the court could have ensured by a totality of the circumstances that Appellant understood the elements, but the court did neither. Appellant concludes he has demonstrated a manifest injustice that would allow him to withdraw his plea and have his judgment of sentence vacated. For the following reason, we do not reach the merits of these issues.

■ Settled Pennsylvania law makes clear that by entering a guilty plea, the defendant waives his right to challenge on direct appeal all nonjurisdictional defects except the legality of the sentence and the validity of the plea. *Commonwealth v. Pantalion,* 957 A.2d 1267, 1271 (Pa.Super.2008).

Indeed, a defendant routinely waives a plethora of constitutional rights by pleading guilty, including the right to a jury trial by his peers, the right to have the Commonwealth prove his guilt beyond a reasonable doubt, and his right to confront any witnesses against him. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (knowing and voluntary guilty plea waives privilege against self-incrimination, right to jury trial, and right to confront one's accusers). Furthermore, a defendant is permitted to waive fundamental constitutional protections in situations involving far less protection of the defendant than that presented herein. [*See, e.g.*], *Peretz v. United States,* 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) ( [stating:] "The most basic rights of criminal defendants are ... subject to waiver"); *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ( [stating] sixth amendment right to counsel may be waived).

*Commonwealth v. Byrne,* 833 A.2d 729, 735–36 (Pa.Super.2003). A defendant

wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Pa.R.Crim.P. 720(A)(1), (B)(1)(a)(i). Failure to employ either measure results in waiver. *Commonwealth v. Tareila*, 895 A.2d 1266, 1270 n. 3 (Pa.Super.2006). Historically, Pennsylvania courts adhere to this waiver principle because "[i]t is for the court which accepted the plea to consider and correct, in the first instance, any error which may have been committed." *Commonwealth v. Roberts*, 237 Pa.Super. 336, 352 A.2d 140, 141 (1975) (holding that common and previously condoned mistake of attacking guilty plea on direct appeal without first filing petition to withdraw plea with trial court is procedural error resulting in waiver; stating, "(t)he swift and orderly administration of criminal justice requires that lower courts be given the opportunity to rectify their errors before they are considered on appeal"; "Strict adherence to this procedure could, indeed, preclude an otherwise costly, time consuming, and unnecessary appeal to this court").

▆▆▆▆▆▆ Likewise:

Normally, issues not preserved in the trial court may not be pursued before this Court. Pa.R.A.P. 302(a). For example, a request to withdraw a guilty plea on the grounds that it was involuntary is one of the claims that must be raised by motion in the trial court in order to be reviewed on direct appeal. Similarly, challenges to a court's sentencing discretion must be raised during sentencing or in a post-sentence motion in order for this Court to consider granting allowance of appeal. Moreover, for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court. Thus, even if an appellant did seek to withdraw pleas or to attack the discretionary aspects of sentencing in the trial court, the appellant cannot support those claims in this Court by advancing legal arguments different than the ones that were made when the claims were preserved.

*Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa.Super.2008), *appeal denied*, 601 Pa. 696, 972 A.2d 521 (2009).

Further, a defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified. *Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa.Super.2002). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." *Id.* Under certain circumstances, a defendant who enters a guilty plea after the court communicates an incorrect maximum sentence may be considered to have entered [his] plea unknowingly and involuntarily. *Commonwealth v. Lenhoff*, 796 A.2d 338 (Pa.Super.2002). However, "every mistake in computing the possible maximum or advising the defendant of the possible maximum will [not] amount to manifest injustice justifying the withdrawal of a guilty plea; the mistake must be material to the defendant's decision to plead guilty." *Commonwealth v. Barbosa*, 819 A.2d 81, 83 (Pa.Super.2003).

*Pantalion, supra* at 1272. As this Court explained in *Barbosa*:

This determination [of materiality] must be fact- and case-specific. Certainly, if a defendant were to plead guilty to avoid a death sentence when there is no possibility of a death sentence, then this mistake would clearly be material. On the other hand, suppose there were a robbery of five people together with con-

spiracy and weapons charges, and the defendant were told that he faced a maximum sentence of 70 to 140 years rather than 65 to 130 years. If the plea negotiations resulted in a sentence of 5 to 10 years, then this mistake would not be material.

*Barbosa, supra* at 83.

■ Instantly, Appellant cannot obtain review of his claim on direct appeal because he failed to preserve it properly by either objecting during the plea colloquy or filing a post-sentence motion to withdraw the plea. *See* Pa.R.Crim.P. 720(B)(1)(a)(i). Accordingly, we decline to review Appellant's challenge to the validity of his plea.

Moreover, Appellant's reliance on *Lenhoff* is misplaced at this juncture for several reasons. First, unlike Mr. Lenhoff, Appellant filed no motion to withdraw his plea in the trial court at any time on any basis. Further, unlike *Lenhoff,* here the record regarding Appellant's plea negotiations is incomplete. Additionally, Appellant previously argued only that he wanted counsel to continue with the direct appeal because Appellant believed his sentence was too high and appealing might enable him to obtain a sentence reduction or a new trial. In fact, this appeal is the first time Appellant actually raises his "maximum sentence" issue to contest to the validity of his plea. Under these circumstances, we express no opinion on the merit of Appellant's maximum sentence claim. Instead, his contention must be tested under a materiality analysis, which Appellant will have to present in a timely filed PCRA petition, under the rubric of ineffective assistance of counsel. *See Barbosa, supra.* Based upon the foregoing, we hold Appellant's challenge to the validity of his guilty plea is not properly before us for review at

this time. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.