J-S63027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NICHOLAS POMPEII | |
| Appellant | No. 678 EDA 2015 |

Appeal from the Judgment of Sentence December 2, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003991-2014
CP-51-CR-0003996-2014
CP-51-CR-0003997-2014
CP-51-CR-0003998-2014
CP-51-CR-0004000-2014

BEFORE:  DONOHUE, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                **FILED NOVEMBER 06, 2015**

Appellant, Nicholas Pompeii, appeals from the December 2, 2014 aggregate judgment of sentence of 11 to 22 years of incarceration, imposed after Appellant entered into an open guilty plea to a multitude of charges.[1] After careful review, we affirm.

─────────────────────────────

[1] As noted by the Commonwealth, "[Appellant] and his co-conspirators committed four armed robberies over a span of [several] days, terrorizing a neighborhood in South Philadelphia." Commonwealth Brief at 3. Relative to these actions, Appellant pled guilty to multiple counts of robbery, aggravated assault, conspiracy, simple assault, possession of an instrument of crime, theft by unlawful taking, receiving stolen property, terroristic threats, possession of a firearm prohibited, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, unauthorized
*(Footnote Continued Next Page)*

The trial court detailed the factual and procedural background of this case, an abridged recitation of which is as follows.

> [Appellant] and four (4) other individuals committed a series of gunpoint robberies in a span of seven days in South Philadelphia.
>
> On October 16, 2013, a co-defendant stole a vehicle located on 1600 Pratt Street, Philadelphia, Pennsylvania that would be used by [Appellant] and the other individuals to drive around South Philadelphia to commit these crimes. … [Appellant] was charged with receiving stolen property and unauthorized use of that motor vehicle.
>
> The first gunpoint robbery took place on October 17, 2013. [Appellant] and a co-defendant approached the complainant at 11 p.m. at night. The co-defendant carried a gun and [Appellant] stated, "Turn around and keep walking or we'll shoot you." [Appellant] later gave a statement admitting to robbing and holding up the complainant at gunpoint.
>
> The second robbery took place on October 19, 2013. [Appellant] and two other males approached the complainant. One of the co-defendants pistol-whipped the complainant in the head while [Appellant] and the other male went through the complainant's pockets. [Appellant] admitted to participating in the robbery and going through the complainant's pockets in a statement made to police.
>
> The third robbery took place that same morning of October 19, 2013, … at 8:07 a.m. at 737 East Passyunk Avenue, Philadelphia, Pennsylvania. [Appellant] and a co-defendant approached a

_(Footnote Continued)_ ————————————

use of a motor vehicle and recklessly endangering another person. Trial Court Opinion, 6/23/15, at 1-2.

female. The co-defendant pulled the gun and [Appellant] stated to the complainant, "Where's your money?" The complainant later identified [Appellant] in a photo array and [Appellant] admitted to the robbery in his statement to police.

The fourth robbery took place at 5:25 a.m. on October 22, 2013. [T]he complainant was approached by two males that knocked her to the ground and went through her pockets. The complainant later identified [Appellant] in a photo array and stated that [Appellant] was the one holding the gun.

At the time of sentencing, [Appellant's] prior record score was a five (5) and the offense gravity score for the leading offense was a ten (10). The standard range for the leading offense, a robbery in which [Appellant] possessed and held a gun, was seventy-eight (78) to ninety (90) months, plus or minus twelve (12) months. The standard range for the other three (3) robberies was sixty-nine (69) to eighty-one (81) months plus or minus twelve (12) months.

The Commonwealth presented the testimony of Brian Kysela, who was [a robbery] victim. Mr. Kysela stated on the evening in question he and his wife were coming home in a taxi at about 11:00 p.m. His wife went up before him. As he was crossing the road to get into his house he heard someone run up behind him. Mr. Kysela turned around to a gunman. The gunman took money that Mr. Kysela had in his hand from the cab along with Mr. Kysela's house keys. The gunman then asked Mr. Kysela what else he had in his pocket. Mr. Kysela gave him his driver's license, credit card, and Zip car membership card.

At that point, [Appellant] ran up to them, told the gunman to ask for his phone, and then demanded "Give us your phone." Mr. Kysela took out his cell phone and the gunman took it. [Appellant] then patted down Mr. Kysela's pockets, front and back, grabbed Mr. Kysela's wife's jacket

and Mr. Kysela's jacket out of his arms, went through them to find nothing and then threw them in the gutter. Mr. Kysela was then threatened to turn around and keep walking or "we will shoot you." When Mr. Kysela hesitated, [Appellant] stated he had a gun. Mr. Kysela kept walking and then they left. Mr. Kysela then went into his house as this happened outside his front door.

Mr. Kysela testified that this crime had a great effect on him and his wife. He stated that neither of them felt safe because he was robbed right outside of his house, right outside of his door. He did not feel safe anywhere in the city. Both he and his wife changed jobs and left the city as a result. Prior to this incident, they had lived in the city for five (5) years. He also stated that it has been difficult for him and his wife to live with this violent crime.

The Commonwealth also read the victim impact statement of Anna Maria Gorraglia. Ms. Gorraglia testified at the sentencing of a co-defendant in front of a judge stating:

> Last year in October I was robbed at gunpoint by two young men. One pointed a gun at my chest while the other one, the defendant, demanded my purse. Even though I handed him my purse he threatened me with, You better have some money here. It probably wasn't that long but it seemed like a lifetime. The things that were going through my head was I'm going to die today. This is it. It's over. I'll never see my children again. Maybe if they shoot me in the back, I'll survive. The defendant demanded [that I] turn around. I thought they were going to shoot me in my back. This event not only impacted my life, but my daughter's life. My daughter was supposed to be with me that day because she overslept. If she was with me things may have been very different. When I came home my daughter started immediately crying. She slept with me for weeks. We were both scared to go outside for a long time. I was scared of

- 4 -

anybody with a hood on and felt like the outside was a war zone. It was six months before I let my daughter walk anywhere alone again. She had gotten very depressed and wasn't eating. I had to take her to the doctor two different times. I used to walk to work, but I no longer do because I am afraid. That route was a shortcut and now I take public transportation. Now I have to spend my money and do not get my morning exercise. The defendant has not only robbed the material possessions of mine but, also, has taken my freedom.

[Appellant] exercised his right of allocution and apologized to his victims, stating:

I have remorse for my victims because I only did – I affected their lives harshly. I affected mine harshly, too. I'm going – I'm – I'm – I'm basically – I'm going through something most people don't go through right now. I may have put myself here in this predicament, but there are certain things – it's life changing. I don't – I can't speak right now.

This [trial c]ourt sentenced [Appellant] to four (4) to eight (8) years of incarceration plus one (1) to two (2) years on the aggravated robbery conspiracy, to run consecutively.

On … the VUFA charges 6105 and 6106, the [trial c]ourt sentenced [Appellant] to four (4) to eight (8) years plus one (1) to two (2) years to run consecutively. The [trial c]ourt sentenced [Appellant] to a straight four (4) to eight (8) years on the aggravated assault, robbery and conspiracy. All three … run concurrently with one another.

[The trial c]ourt sentenced [Appellant] to five (5) to ten (10) years on the aggravated assault, robbery and one (1) to two (2) years on the VUFA 6105 and 6106 to run consecutive to the other sentences. [Appellant] was sentenced to one (1) to two (2) years also to run consecutive to the other sentences. In total, [Appellant] was sentenced to

eleven (11) to twenty-two (22) years of incarceration and ordered to pay $1050.91 in restitution.

Trial Court Opinion, 6/23/15, at 2-7 (internal citations omitted).

On December 11, 2014, Appellant filed a motion for reconsideration, which, after a hearing, the trial court denied on February 10, 2015. Appellant filed a timely notice of appeal on March 6, 2015. [2]

On appeal, Appellant presents one issue for our review.

> Whether the trial court erred by imposing an "excessive sentence" violating the Pennsylvania Sentencing Code, 42 Pa. C.S. §9701 et. seq. by not following the general principle that the sentence imposed should call for 1) confinement consistent with the protection of the public; 2) the gravity of the offense as it relates to the impact on the life of the victim; and 3) the rehabilitative needs of [Appellant], and amounted to an abuse of discretion. See, 42 Pa. C.S. §9721(B)?

Appellant's Brief at 3.

At the outset, we note that Appellant's argument on appeal pertains to the discretionary aspects of his sentence. "Pennsylvania law makes clear that by entering a guilty plea, the defendant waives his right to challenge on direct appeal all non[-]jurisdictional defects except the legality of the sentence and the validity of the plea." *Commonwealth v. Lincoln*, 72 A.3d 606, 609 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

319 (Pa. 2014). However, when a defendant's plea is an open guilty plea, he or she does not waive claims regarding the discretionary aspects of the sentence "because there was no agreement as to the sentence [the defendant] would receive." **Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013) (citation omitted). Nevertheless, "[t]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." **Commonwealth v. Tobin**, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted). When an appellant forwards an argument pertaining to the discretionary aspects of the sentence, this Court considers such an argument to be a petition for permission to appeal. **Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." **Commonwealth v. Cartrette**, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. **Commonwealth v. Trinidad**, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.*

Instantly, Appellant filed a timely motion for modification of sentence and notice of appeal. Also, he has included a Rule 2119(f) statement in his brief. Appellant's Brief at 2. We therefore proceed to determine whether Appellant has raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012).

In this case, Appellant avers that the trial court abused its discretion based on the following claims.

> The trial court erred by imposing an "excessive sentence" violating the Pennsylvania Sentencing Code, 42 Pa. C.S. §9701 et. seq. by not following the general principle that the sentence imposed should call for 1) confinement consistent with the protection of the public; 2) the gravity of the offense as it relates to the impact on the life of the victim; and 3) the rehabilitative needs of [Appellant], and amounted to an abuse of discretion. See, 42 Pa. C.S. §9721(B) …
>
> The Sentence imposed was unreasonable and pursuant to the Pennsylvania Sentencing Code, in that total confinement for a period of 11 to 22 years is an excessive sentence. [Appellant] is "amenable to drug treatment" and vocational training, and rehabilitation.

Appellant's Pa.R.A.P. 2119(f) Statement, Appellant's Brief at 2; **see also** Appellant's Statement of the Question Involved, **id**. at 3.

This Court has long recognized that "an allegation that a sentencing court … did not adequately consider certain factors does not raise a substantial question that the sentence was inappropriate." **Commonwealth v. Johnson**, 961 A.2d 877, 880 (Pa. Super. 2008), *appeal denied*, 968 A.2d 1280 (Pa. 2009); **see also Commonwealth v. Bullock**, 868 A.2d 516, 529 (Pa. Super. 2005). Furthermore, this Court has held that an argument that the trial court failed to consider certain mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. **Commonwealth v. Ratushny**, 17 A.3d 1269, 1273 (Pa. Super. 2011); **accord Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010).

Consequently, Appellant has failed to a raise a substantial question for our review.[3] *See Edwards*, *supra*.

Based on the foregoing, we deny Appellant's petition for permission to appeal the discretionary aspects of his sentence, and affirm the trial court's December 2, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2015

---

[3] Even if we were permitted to address the merits, Appellant would not be entitled to relief. We note that the trial court provided detailed reasoning for its sentence, including its statement that it "*chose to impose* a *mitigated guideline state sentence* to permit [Appellant's] release from custody at a relatively young age but a term of incarceration to provide assurance that he is rehabilitated from the tendencies which caused him to resort to crime. Additionally, based on [Appellant's] age and needs for treatment, the [trial c]ourt recommended SCI-Chester." Trial Court Opinion, 6/23/15, at 10, *citing* N.T., 12/2/14, at 30 (emphasis added).