J-S10039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DEBORAH ANNE KEELEY, | |
| Appellant | No. 2016 EDA 2015 |

Appeal from the Judgment of Sentence March 17, 2015
in the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0002679-2013

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:  **FILED FEBRUARY 05, 2016**

Appellant, Deborah Anne Keeley, appeals from the judgment of sentence of March 17, 2015, entered following her open guilty plea to three counts of involuntary deviate sexual intercourse with a child, one count of aggravated indecent assault of a child, four counts of indecent assault of a child, three counts of corruption of minors, one count of endangering the welfare of a child, and twelve counts of criminal conspiracy.[1]  Specifically,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3123(a), 3125(a)(7), 3126(a)(7), 6301(a)(1)(i), 4304(a)(1), and 903, respectively.

Appellant challenges the denial of her pre-trial motion for a change of venue.

For the reasons discussed below, we affirm.[2]

We take the underlying facts and procedural history in this matter

from the trial court's July 28, 2015 opinion and our independent review of

the certified record.

> [In] December 2012, [twenty-three]-year-old victim [one] [(victim one)], born on 11/29/89, reported to Trooper Heather Heffner, of the Pennsylvania State Police Reading Barracks that when she was approximately [five] or [six] years old, through the age of [twenty-two], she was sexually and physically abused by [co-defendant] biological father [(Father)]. [Victim one] reported that the physical and sexual abuse occurred when they resided at different homes in Chester, Montgomery, and Berks counties from 1996-2012.
>
> The sexual and physical abuse that occurred from 1996-2001, when they lived at 920 Levengood Road in Montgomery County, at times, also involved [Appellant] when [victim one] was between the ages of [six-eleven]. [Appellant] was the former girlfriend of [Father], and she lived with him and his two daughters, [victim one] and [victim two], from 1996-2001. [Appellant] along with [Father] also had two biological children during that timeframe. [Appellant and Father] were over the age of [eighteen], responsible for the welfare, protection and care of the minor children at their home.
>
> While [victim one] lived with [Appellant] at the Levengood Road residence, [Father] would force [victim one] to touch his penis with her hands and mouth on a regular basis, as well as touch her genitals with his hands and mouth. These sexual assaults would mostly occur in the master bedroom, but also, at

---

[2] This Court may affirm for any reason, including reasons that are different from those of the trial court. **See Commonwealth v. Hernandez**, 886 A.2d 231, 240 (Pa. Super. 2005), *appeal denied*, 889 A.2d 1122 (Pa. 2006).

times, in [victim one's] bedroom. The sexual assaults occurred both before and after school, and sometimes at night. [Father] also forced [victim one] and her sister, [victim two], who was one year younger than [victim one], to perform oral sex on each other in their basement while he watched. The victims were approximately [six] and [seven] years old when that conduct occurred.

[Father] would routinely punish both [victim one and victim two] by smashing their heads together, slapping them in their faces, and whipping them with a belt. [Appellant] would also routinely beat the victims by slapping them and pulling their hair. [Appellant] fought frequently with [victim two], and on numerous occasions placed a pillow over [victim two's] face when she couldn't stop coughing, causing her to lose [breath] and urinate in her clothing. On multiple occasions, [Appellant] forced [victim two] to sleep in urine-soaked clothing. If the victims sustained visible bruising as a result of their assaults, [Appellant] would keep them home from school so that no one would observe their injuries. Both [victims] were terrified of [Appellant and Father].

[Father and Appellant] deprived the victims of food on a regular basis. There was a lock on their refrigerator at times, and when the victims were hungry, they, sometimes, ate out of the garbage or dog food.

One of [victim one's] first memories of the sexual abuse involved [Father and Appellant], when she was about [six] years old, at the Levengood residence. Both [Father and Appellant] escorted [victim one] back to the master bedroom after they asked her if she wanted to "mess around." [Victim one] did not know what that meant, but when they went into the bedroom [Father and Appellant] took off all their clothes and laid down on the bed. [Father] forced [victim one] to touch his penis with her hand and instructed her how to stroke him until he ejaculated. [Father] also told [victim one] to "grab and lick" [Appellant's] breasts, which she did. [Father] then took [victim one's] hand and put it on [Appellant's] vagina and moved her hand to show her how to rub [Appellant's] clitoris. [Father] then told [victim one] "to lick her pu**y" and [she] was forced to perform oral sex on [Appellant] after [Father] showed her how to do it, and . . . [Father] was naked on the bed next to them, and [victim one]

- 3 -

knelt between [Appellant's] legs, and performed oral sex until she climaxed. [Appellant] did not object or refuse in any way.

Approximately a week later [Father] requested that [victim one] go back to the master bedroom because [Appellant] had asked for her. While in their bedroom [victim one] rubbed [Appellant's] clitoris like [Father] had shown her before. [Victim one] rubbed [Appellant's] clitoris at least five times while they lived together at their Levengood Road residence. [Appellant] also rubbed [victim one's] clitoris on at least one occasion while in the master bedroom and at [Father's] request. All these sexual assaults occurred when [victim one] was under the age of [twelve].

As [victim one] got older, her breasts began to grow around age [eleven]. [Appellant] began to touch [victim one's] breasts while they were in the master bedroom as [Father] watched. On at least two occasions in the master bedroom, [Appellant] performed oral sex on [victim one] while [Father] watched. [Victim one] was instructed by [Father] to go to the master bedroom and watch [Father and Appellant] have sexual intercourse. [Father] told [victim one] to touch and lick [Appellant's] breasts while they continued to have intercourse, and [victim one] did.

[Appellant] engaged in whatever sexual activity [Father] asked her to do in front of [victim one], and never refused in [victim one's] presence. The sexual abuse by [Father] escalated to vaginal and anal rapes throughout the time she lived with him, and later [victim one] was also sexually assaulted by [Father's] current wife, co-defendant [stepmother], when she was between the ages of [twelve and] her early [twenties]. All of these sexual assaults, and others, were reported to police only after [victim one] left [Father's] residence in Berks County, at age [twenty-two], and felt safe in a women's shelter.

Trooper Heather Heffner from the Pennsylvania State Police Reading Barracks, the assigned investigator in this case, took a statement from [Appellant] on March 5, 2013, wherein [Appellant] admitted that [victim one] would grab her breasts while they were in the bedroom and at other locations in the house from 1996-2001. [Appellant] stated that one time [victim one's] hand was on the top of [Appellant's] bare vagina. [Appellant] also reported that she had observed [Father]

- 4 -

engaged in sexual abuse with [victim one] anywhere from [ten-fifteen] times. [Appellant] further reported that, at times, she saw [Father] stroking [victim one's] vagina, and at other times she witnessed [victim one] stroke [Father's] penis while they lived at the Levengood Road residence. [Appellant] also stated that she saw [victim one] performing oral sex on [Father] on one occasion. [Appellant] never reported the abuse to Children, Youth and Family services.

(Trial Court Opinion, 7/28/15, at 3-5).

On August 29, 2013, the Commonwealth filed a criminal information charging Appellant with the aforementioned offenses. On October 25, 2013, Appellant filed an omnibus pre-trial motion, seeking, in part, a change of venue and severance of her case from that of co-defendants Father and Stepmother. The trial court denied the motion on March 19, 2014. Appellant filed a motion for reconsideration on December 8, 2014. On December 10, 2014, Appellant withdrew her motion for reconsideration and entered an open guilty plea to the aforementioned offenses. On March 17, 2015, the trial court, after a review of the pre-sentence investigation report, sentenced Appellant to an aggregate term of incarceration of not less than twenty-two nor more than forty-four years.

On March 26, 2015, Appellant filed a post-sentence motion challenging portions of her sentence and certain of the terms of probation. Appellant did not seek to withdraw her guilty plea. The trial court denied the motion on June 26, 2015. Appellant filed the instant, timely appeal. On July 7, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). On July 20, 2015,

Appellant filed a timely Rule 1925(b) statement challenging the denial of her motion for a change of venue; Appellant did not seek to withdraw her guilty plea. On July 28, 2015, the trial court filed an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following question for our review:

(1). [Did the trial court erroneously deny] Appellant's post-trial[3] motion for transfer of the proceedings to the proper venue per Pa.R.Crim.P.Rule130(A)[?]

(Appellant's Brief, at 4) (underline and unnecessary capitalization omitted).

"The standard of review for a denial of a motion for change of venue is whether there has been an abuse of discretion on the part of the trial judge." ***Commonwealth v. Devries***, 112 A.3d 663, 666 (Pa. Super. 2015) (citation omitted). However, prior to reviewing the merits of Appellant's claim, we must address whether it is properly before us. In the instant matter, Appellant entered an open guilty plea. It is settled that "by entering a guilty plea, the defendant waives [her] right to challenge on direct appeal all nonjurisdictional defects except the legality of the sentence and the validity of the plea." ***Commonwealth v. Lincoln***, 72 A.3d 606, 609 (Pa. Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2013) (citation omitted). In

---

[3] The record does not show any post-trial motion for change of venue. At most, the record reflects that, at sentencing, defense counsel stated that he wished to note a continuing objection to the denial of the **pre-trial** motion for change of venue. (***See*** N.T. Sentencing, 3/17/15, at 69). Thus, we assume that Appellant is, in actuality, challenging the denial of her pre-trial motion for change of venue.

*Commonwealth v. Monaco*, 475 A.2d 843 (Pa. Super. 1984), *appeal denied*, 567 A.2d 652 (Pa. 1989), this Court specifically held that a general challenge on appeal to the pre-trial denial of a motion for a change of venue, is not viable where the appellant has pleaded guilty. **See Monaco**, **supra** at 847.

In her brief, Appellant utterly disregards the fact that she pleaded guilty; at no point does she advance any argument as to why she believes that a challenge to the denial of her motion for a change of venue survived the entry of the guilty plea. (**See** Appellant's Brief, at 14-18). While this Court did state in **Monaco** that a challenge to the denial of a motion for a change of venue might be viable if made in the context of an argument that an appellant's guilty plea was involuntary, **see Monaco**, **supra** at 847, Appellant never claims that her plea was involuntary and does not seek to withdraw it.[4] Thus, we find that Appellant's challenge to the denial of her motion for a change of venue is not a viable issue on appeal. **See id.**; **see also Lincoln**, **supra** at 609. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

_____

[4] We note that because Appellant never sought to withdraw her guilty plea below, she waived any challenge to its voluntariness on appeal. **See Lincoln**, **supra** at 610 (holding appellant waived challenge to voluntariness of guilty plea on direct appeal where he did not object during plea colloquy or move to withdraw his plea at trial court level).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2016