J-A08037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIOVANNY COTTO | : | |
| | : | |
| Appellant | : | No. 2218 EDA 2018 |

Appeal from the Judgment of Sentence Entered February 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001586-2016

BEFORE:  LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED MAY 20, 2020**

Giovanny Cotto (Appellant) appeals from the judgment of sentence[1] entered in the Philadelphia County Court of Common Pleas, following a negotiated guilty plea for numerous offenses.  Appellant challenges the discretionary aspects of his sentencing and the voluntariness of his negotiated guilty plea.  We affirm.

Appellant was 17 years old at the time of the underlying incident.  On November 24, 2015, shortly before 9:00 a.m., Pennsylvania State Police Troopers Timothy Jeter and William Evans stopped Appellant's vehicle on the

_____

[1] While Appellant purported to appeal from purported to appeal from the July 6, 2018 order denying his post-sentence motion, the appeal lies properly from the judgment of sentence entered February 27, 2018.  ***See Commonwealth v. Borovichka***, 18 A.3d 1242, 1245 n.1 (Pa. Super. 2010).  Accordingly, we have amended the caption.

Interstate 76 ramp, in Philadelphia, for an expired registration. *N.T. Sentencing H'ring, 6/7/17, at 36.* Appellant was the driver and three passengers occupied the vehicle. After providing troopers with his name and date of birth, the troopers discovered Appellant was an unlicensed driver. **Id.** at 36-37. Trooper Patrick Casey shortly arrived thereafter as backup. Troopers then removed the three passengers from the vehicle and placed them in police cars.

Upon arrival of a tow truck, Appellant sped off in his vehicle, weaving his way in and out of morning rush hour traffic onto Interstate 76. The troopers immediately returned to their vehicles, activated lights and sirens, and pursued Appellant. Troopers unsuccessfully tried to box Appellant's vehicle in to prevent harm to other drivers, but Appellant intentionally slammed his car into Trooper Casey's vehicle, causing it to lose power. *N.T.* at 38. As he pulled away, Appellant crashed into the back of a school bus and his vehicle became wedged underneath. Trooper Casey's vehicle drifted towards Appellant's vehicle so that they were almost side by side. Appellant then pointed a firearm directly at Trooper Casey and fired a bullet, which entered the left side of the trooper's neck and became lodged in his right shoulder. **Id.** As Troopers Jeter and Evans arrived onto the scene in their vehicles, Appellant began shooting at them. Both troopers, including the injured Trooper Casey, returned fire. Trooper Casey then ran from his car to Trooper Evan's police vehicle where he was then rushed to the hospital. **Id.**

at 39. Appellant ignored commands, from the troopers and Philadelphia police officers who arrived at the scene, to put his hands in the air. As troopers and Philadelphia Police converged, Appellant jumped over the center median on Interstate 76 and fled on foot in the opposite travel lanes. Police detained Appellant and took him into custody. ***Id.***

During this chase, Appellant's vehicle caught fire and within minutes, both his vehicle and the school bus were engulfed in flames. It took the Philadelphia Fire Department over 20 minutes to extinguish the flames. *N.T.* at 39.

The Commonwealth charged Appellant with 23 charges: three counts each of attempted murder[2], simple assault, aggravated assault, assault of a law enforcement officer, recklessly endangering another person[3] (REAP); two counts each  of criminal mischief and fleeing or attempting to elude an officer.;[4] and one count each of possessing instruments of crime, causing catastrophe, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possession of firearm by minor.[5]

---

[2] 18 Pa.C.S. §§ 901(a), 2501(a).

[3] 18 Pa.C.S. §§ 2701(a)(1), 2702(a), 2702.1, 2705.

[4] 18 Pa.C.S. § 3304(a)(4); 75 Pa.C.S. § 3733(a).

[5] 18 Pa.C.S. §§ 907(a), 3302(a), 6106(a)(1), 6108, 6110.1(a).

On March 3, 2016, Appellant filed a motion for decertification to juvenile court, but subsequently waived decertification. Appellant initially entered a non-negotiated guilty plea on June 7, 2017, to three counts of attempted murder, two counts of aggravated assault, and one count each of "aggravated assault of a law enforcement officer", *See* Written Guilty Plea Colloquy, 6/7/17, REAP, causing catastrophe, carrying a firearm without a license, and fleeing or attempting to elude an officer. The remaining charges were *nolle prosequied*. The trial court ordered a presentence investigation and mental health evaluation. On November 13, 2017, Appellant filed a motion to withdraw his plea. The trial court continued the sentencing hearing seven times over five months, while Appellant's counsel negotiated with the Commonwealth and conferred with Appellant regarding a plea agreement.

At his sentencing hearing on February 27, 2018, Appellant was permitted to enter into a new, **negotiated** guilty plea to the same 10 charges as he did in his non-negotiated guilty plea, but with a negotiated sentence. Per the parties' agreement, the trial court sentenced Appellant to an aggregate term of 35 to 70 years' incarceration.

On March 8, 2018, Appellant filed a counseled post-sentence motion challenging his 35 to 70 year sentence as an unconstitutional *de facto* life sentence. Counsel also filed a motion to withdraw from representation and requested a delayed decision on the post-sentence motion pending the appointment of new counsel. Current counsel entered his appearance on April

5, 2018. Appellant's post-sentence motion was denied by operation of law on July 6, 2018. Appellant timely filed a notice of appeal. Although the court did not require one, Appellant filed a Pa.R.A.P. 1925(b) statement of issues complained on appeal. Appellant's sole challenge is to the sentence imposed. Appellant then filed a motion for remand to supplement the Rule 1925(b) statement, which the trial court granted on May 28, 2019. Appellant filed an amended supplemental Rule 1925(b) statement on June 17, 2019.

Appellant presents two issues for our review:

1. Did the court impose a manifestly excessive sentence *de facto* life sentence on a direct file juvenile case?

2. Did the trial court violate Rule 590 of the Pa.R.Crim.Proc.?

Appellant's Brief at 3.

In his first issue, Appellant claims that his sentence is manifestly excessive. Appellant avers he was a juvenile when he committed the crimes and his sentence constitutes a *de facto* life sentence in violation of the United States Supreme Court decision in **Miller v. Alabama**, 567 U.S. 460 (2012). **Miller** held that mandatory life sentences without possibility of parole (LWOP) for juveniles are unconstitutional and, instead, courts must consider certain factors when sentencing a juvenile. These factors include: consideration of the defendant's age at the time of the offense, impulsivity and failure to appreciate the risks and consequences of his actions, home environment, circumstance of the offense, likelihood of being charged with a lesser crime had the youth been able to deal with police officers, prosecutors, and his

attorney, and potential for rehabilitation. Appellant claims the trial court violated **Miller** and 18 Pa.C.S. § 1102.1[6] because it ignored sentencing guidelines and did not consider certain mitigating factors that it must account for when sentencing him, such as his age and psychological evaluation.

Appellant challenges the discretionary aspects of his sentence. Generally, where a defendant enters into a negotiated plea agreement that includes the terms of the sentence, the defendant may not seek a discretionary appeal relating to those agreed-upon terms. **See Commonwealth v. Brown**, 982 A.2d 1017, 1019 (Pa. Super. 2009); s**ee also, id.**, (explaining where defendant pleads guilty **without** agreement as to sentence, *i.e.* an open plea, defendant retains right to seek review of discretionary aspects of sentencing).

Here, it is clear that Appellant's plea on February 27, 2018 was negotiated. Thus, Appellant may not seek a discretionary aspects of sentencing appeal relating to those agreed upon sentencing terms. **See Brown**, 928 A.2d at 1019.

Further, this Court has determined that a "sentence of 30 years to life imprisonment does not constitute a *de facto* LWOP sentence which entitles a defendant to the protections of **Miller**." **Commonwealth v. Foust**, 180 A.3d

---

[6] 18 Pa.C.S. § 1102.1, enacted following **Miller**, listed factors a sentencing court must consider when determining whether to impose a sentence of life without parole for juvenile convicted of first or second degree murder.

416, 438 (Pa. Super. 2018); *see also, Commonwealth v. Bebout*, 186 A.3d 462, 469 (Pa. Super. 2018) (holding minimum sentence of 45 years' incarceration for murder committed by a 15-year-old did not constitute impermissible *de facto* sentence of life in prison without parole for juvenile). Accordingly, **Miller** would not be applicable to Appellant's sentence. Here, the trial court thoroughly explained:

> Appellant's constitutional claim is without merit because his sentence is not of the type addressed in **Miller**, as it is neither a life sentence nor was Appellant denied the possibility of parole.
>
> \* \* \*
>
> . . . The Supreme Court of Pennsylvania interpreted **Miller** in a 2017 homicide case. **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017) (where a 14-year-old committed first–degree murder for initiation into the Bloods gang). The court in **Batts** held that **Miller** did not create a categorical ban on life sentences without parole for juveniles, only that "a sentencing court has no discretion to sentence a juvenile offender to life without parole unless it finds that the defendant is one of the 'rare' and 'uncommon' children" whose personality is immune to therapeutic intervention and completely incorrigible. **Id.** at 444. Should a juvenile offender fall into that category, the sentencing court is free to use its discretion and sentence that offender to life. *Id*. at 444.
>
> The types of sentences analyzed in **Miller** and **Batts** and the type of sentence Appellant received after entering into a negotiated guilty plea are easily distinguishable. [**Miller**, 567 U.S at. 460; **Batts**, 163 A.3d at 410]. Appellant was not convicted of any offense that would require a mandatory life sentence without parole. . .
>
> \* \* \*
>
> The [t]rial [c]ourt is sympathetic to Appellant's age even though he was three years older at the time of the incident than were the 14-year-old defendants in **Miller** and **Batts**. [**See**

> ***Miller,*** 567 U.S. at 460; ***Batts***, 163 A.3d at 410]. Appellant was 17 years old on November 24, 2015 and young people make mistakes. *N.T.* 06/07/2017 at 8-9. What happened that morning during rush-hour traffic, however, cannot be characterized as a youthful indiscretion. After leading police officers on a dangerous chase in and out of traffic on 1-76 and onto 1-676 in Philadelphia, Appellant hit a school bus that then caught on fire. ***Id.*** at 38. Appellant continued running from the police before opening fire in the middle of rush-hour traffic, shooting a State Trooper in the neck. ***Id.*** Given how busy the highway was at that time and how many officers had confronted Appellant, it is remarkable that no one aside from Trooper Casey was injured or killed.

Trial Ct. Op. 8/2/19. If Appellant's sentencing issue were properly before this Court, we would agree with the trial court that ***Miller*** would not apply.

In his second issue, Appellant contends that his negotiated guilty plea was not voluntary because the trial court failed to determine on the record whether he understood the negotiated plea agreement, and the court failed to advise him of the permissible range of sentence. Appellant avers that this failure to provide a proper colloquy violated Pa.R.Crim.P. 590.

Pennsylvania Rule of Appellate Procedure 302(a) provides, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 903. Further, an appellant wishing to challenge the voluntariness of a guilty plea on direct appeal must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing; failure to employ either measure results in waiver. ***Commonwealth. v. Lincoln***, 72 A.3d 606, 609 (Pa. Super. 2013); ***see*** Pa.R.A.P 720(A)(1), (B)(1)(a)(i).

At no point in the proceedings before the trial court did Appellant challenge the voluntariness of his plea or seek to withdraw it. Appellant raised no such issue in his post-sentence motion and instead, raises it for the first time on appeal. Thus, this issue is waived. *See* Pa.R.A.Ap. 302(a).

Moreover, even if Appellant's claim were preserved, he would not be entitled to relief. To ensure that a plea is voluntary, knowing, and intelligent, Rule 590 of the Pennsylvania Rules of Criminal Procedure requires that a trial court conduct a separate inquiry of the defendant before accepting a guilty plea. The comment to Rule 590 provides the trial court should determine, *inter alia*, whether the defendant understands the permissible range of sentences. *Commonwealth v. Hart*, 174 A.3d 660, 667-68 (citations omitted). "The purpose of [Rule 590] is to insure that the defendant fully understands the nature of the crimes to which he or she is pleading guilty and the rights that are being waived by the plea." *Commonwealth v. Carter*, 656 A.2d 463, 465 (Pa. 1995). The comment to Rule 590 further states that "nothing in the rule would preclude the use of a written colloquy that is read, completed, signed by the defendant, and made part of the record of the plea proceedings. [However, t]his written colloquy would have to be supplemented by some on the-record oral examination." Pa.R.Crim.P. 590, *cmt*.

Here, the trial court explained:

> . . .Throughout the plea and in sentencing, the [t]rial [c]ourt gave Appellant ample time to speak to his attorney and his family about the best path forward in the face of extremely serious charges. *N.T.* at 9. A negotiated guilty plea by nature requires both parties

to come together to reach an agreement. Appellant's attorney went to great lengths to ensure that his client understood everything that was happening around him in court. *Id.* at 19-20, 32. Appellant's attorney, with the permission of the [t]rial [c]ourt, also clarified anything that might confuse Appellant throughout the sentencing process. *Id.* It follows that Appellant's attorney would have also made Appellant aware of the terms of his plea. Appellant was also present in court when counsel presented the negotiated guilty plea and its sentencing terms. *N.T.* 2/27/18 at 4.

Finally, the [t]rial [c]ourt detailed the terms of Appellant's sentence and his appellate rights to confirm that Appellant understood all of the information that had been presented. *Id.* at 39-44. It is clear that Appellant entered into both the prior non-negotiated guilty plea and the negotiated guilty plea knowingly, intelligently, and voluntarily. *Id.* at 35. The [t]rial [c]ourt complied with Pa.R..Crim.P 590.

Trial Ct. Op. at 6-7.

Here, Appellant and the Commonwealth negotiated the length of Appellant's sentence. The Commonwealth agreed to *nolle pros* certain charges in exchange for a guilty plea to 10 charges for an aggregate sentence of 35 to 70 years. Appellant completed a written guilty plea colloquy for the non-negotiated guilty plea on June 7, 2017. Eight months later, on February 27, 2018, at his sentencing hearing, the trial court, as well as Appellant's attorney, explained to Appellant the charges that he would plead guilty to, the rights he was waiving, and the **length of his sentence**. *See* Pa.R.Crim.P. 590, *cmt*. Appellant stated on the record that he understood. Accordingly, Appellant is not entitled to any relief.

As discussed above, Appellant's initial, June 7, 2017, open plea to ten charges did not include any agreement as to the sentence he would receive.

We emphasize that he completed a written guilty plea colloquy, which set forth the permissible range of sentences for each offense. *See* Written Guilty Plea Colloquy, 6/7/17. Eight months later, on February 27, 2018, Appellant entered guilty pleas to the same ten charges, this time with an agreement with the Commonwealth for a recommended sentence of 35 to 70 years' incarceration. At this sentencing hearing, the trial court, as well as Appellant's attorney, explained to Appellant the charges that he would plead guilty to, the rights he was waiving, and the **length of his sentence**. *See* Pa.R.Crim.P. 590, *cmt*. Appellant stated on the record that he understood. The trial court accepted his pleas and imposed the sentence negotiated by the parties. Although the transcript for this hearing does not indicate that the permissible range of sentences was again stated on the record, we would find no merit to Appellant's claim that he was not aware of, or ever apprised of, the permissible range of sentences as required by Rule 590. Accordingly, Appellant would not be entitled to any relief.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/20/2020*

- 11 -