J-A08011-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT LINCOLN | |
| Appellant | No. 3632 EDA 2003 |

Appeal from the Judgment of Sentence October 27, 2003
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP# 0305-0501 1/1

BEFORE: GANTMAN, J., ALLEN, J., and OTT, J.

MEMORANDUM BY GANTMAN, J.:                    **FILED OCTOBER 18, 2017**

Appellant, Robert Lincoln, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his negotiated guilty plea to attempted murder, aggravated assault, and robbery.[1] We affirm.

A prior memorandum decision of this Court sets forth the relevant facts of this case as follows:

> In November, 2002, [A]ppellant savagely beat a woman in whose home he was a guest, stole the proceeds of her social security checks, and left the victim and her two severely retarded children to fend for themselves. Unable to reach his sister by telephone, the victim's brother came to the victim's home, discovered her lying in a pool of blood, and her children sitting in a pile of their own feces.

---

[1] 18 Pa.C.S.A. §§ 901 (2501 related), 2702, and 3701, respectively.

***Commonwealth v. Lincoln***, No. 2746 EDA 2005, unpublished memorandum at 1 (Pa.Super. filed June 19, 2006). Appellant provided the Commonwealth with a signed confession. The victim was hospitalized for a month and endured seven surgeries including one to treat an open skull fracture and another for permanent removal of her badly damaged left eye. When the victim was well enough, she identified Appellant as her assailant. The victim said Appellant had used his fists and a radio to beat her to near death. A previous trial court opinion continued as follows:

> On October 27, 2003, following a guilty plea colloquy, [Appellant] entered a negotiated plea of guilty to Robbery, Aggravated Assault, and Attempted Murder. This [c]ourt sentenced [Appellant] to sixteen (16) to forty (40) years for Attempted Murder and twenty (20) years['] probation for Robbery, to be served consecutive to the prison term. The sentence for Aggravated Assault merged with Attempted Murder for sentencing purposes. All other charges were *nolle prosequi.*
>
> On November 23, 2003, [Appellant] filed a Notice of Appeal. On January 5, 2004, the appeal was withdrawn. On February 6, 2004, [Appellant] filed a Post Conviction Relief Act ("PCRA") Petition. Counsel was appointed,[2] and on

---

[2] On May 26, 2005, counsel filed a "no merit" letter pursuant to ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988), stating that the issues in Appellant's *pro se* PCRA petition were without merit and counsel found no other meritorious issues to raise. In that petition, counsel reviewed and rejected the following claims: (1) whether counsel was ineffective for failing to file a motion to suppress as tainted complainant's identification that formed the basis for Appellant's arrest because the detectives investigating the case gave complainant a photo array of extra-large pictures due to complainant's eye injury; (2) whether counsel was ineffective at the preliminary hearing for failing to file a motion to quash the transcript because complainant did not make an identification at the hearing (Appellant raised

August 25, 2005, the Petition was dismissed…. On September 9, 2005, [Appellant] filed a *pro se* Notice of Appeal. On June 19, 2006, the Pennsylvania Superior Court affirmed the [PCRA] court. On July 31, 2006, [Appellant] filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. On January 4, 2007, the Supreme Court denied [Appellant's] petition.

(Trial Court Opinion, filed September 25, 2012, at 1). Appellant sought *habeas corpus* relief in the federal court. On August 24, 2011, the United States Court for the Eastern District of Pennsylvania granted Appellant a conditional writ of *habeas corpus*, concluding Appellant had been denied effective assistance of counsel **on direct appeal**, solely because Appellant's counsel had discontinued the direct appeal without consulting Appellant. The writ stated Appellant would be released from custody unless the state appellate court reinstated his direct appeal rights *nunc pro tunc* within 180 days. Nothing in the writ referred to the reinstatement of Appellant's post-sentence motion rights, and Appellant did not ask for that relief.

Instead, on October 17, 2011, Appellant filed an application to reinstate his direct appeal *nunc pro tunc*, which this Court granted on December 9, 2011. The trial court ordered Appellant on July 10, 2012, to file a statement of errors complained of on appeal, pursuant to Pa.R.A.P 1925(b); and

_____

this claim notwithstanding the record stipulation, made for purposes of the preliminary hearing only, that Appellant was the person the victim had identified as her assailant, Robert); (3) whether prior counsel was ineffective generally; (4) whether Appellant's plea was knowing, intelligent, and voluntary; (5) whether prior counsel was ineffective for failing to file a motion to withdraw the guilty plea.

Appellant complied on August 21, 2012.

In Appellant's first reinstated direct appeal, we concluded Appellant's challenge to the validity of his plea was procedurally waived because he failed to move to withdraw the plea during the plea process or file a post-sentence motion to withdraw the plea. ***See Commonwealth v. Lincoln***, 72 A.3d 606 (Pa.Super. 2013), *appeal denied*, 624 Pa. 688, 87 A.3d 319 (2014). This Court specifically advised Appellant to file a PCRA petition under the rubric of ineffective assistance of counsel if he wished to seek a merits review of his new and more specific issues regarding the validity of his plea. On February 27, 2014, our Supreme Court denied Appellant's petition for allowance of appeal.

Instead of filing the PCRA petition as directed, Appellant returned to federal court, where he argued the district court's 2011 order had required this Court to address, **on the merits**, Appellant's challenges to the validity of his guilty plea. The federal district court agreed and, on April 2, 2014, it entered an order granting Appellant a conditional writ of *habeas corpus*, vacating his conviction and sentence, and releasing him from custody, unless within ninety (90) days of that court's order, Appellant's state direct appeal was again reinstated *nunc pro tunc* for review on the merits of his specific claims

On April 4, 2014, Appellant filed with this Court an emergency application for reinstatement of his second direct appeal *nunc pro tunc*. The

- 4 -

Commonwealth opposed Appellant's application in this Court while the Commonwealth appealed the federal district court's April 2, 2014 order to the Third Circuit Court of Appeals. On June 30, 2014, this Court stayed Appellant's application for reinstatement, pending resolution of the federal appeal, and directed the parties to apprise this Court of the federal appellate court decision immediately upon its filing. The federal district court's April 2nd order was also stayed pending the federal appeal. The Third Circuit Court of Appeals affirmed the district court's order on December 12, 2014, and inexplicably directed the **Commonwealth** to reinstate Appellant's second direct appeal *nunc pro tunc* by December 25, 2014.[3]

On December 15, 2014, the Commonwealth withdrew its opposition to Appellant's April 4, 2014 emergency application for reinstatement of his second direct appeal *nunc pro tunc*. At the Commonwealth's request, the Court of Common Pleas reinstated Appellant's direct appeal rights *nunc pro*

---

[3] During the second round of federal court proceedings, the case suggests the Commonwealth waived any objection to Appellant's failure to exhaust state statutory remedies under the PCRA, which he should have done, and as we had instructed, before again going to federal court for *habeas corpus* relief. **See generally** 28 U.S.C.A. § 2254 (providing: "(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"). We are, however, unable to confirm any waiver and can only presume it because the federal court accepted and reviewed Appellant's second application for *habeas corpus* relief.

*tunc* on December 22, 2014. On December 30, 2014, Appellant went back to federal court demanding release from prison because the Commonwealth had purportedly failed to reinstate Appellant's direct appeal in the Superior Court. Appellant had the duty to move to lift the stay in effect, but this Court lifted its June 30, 2014 stay on Appellant's emergency application for reinstatement of his second direct appeal *nunc pro tunc* and resuscitated his direct appeal for disposition on the merits.

Notwithstanding the reinstatement, Appellant yet again sought federal court relief based on the Commonwealth's purported non-compliance with the Third Circuit Court of Appeals' December 12, 2014 order and this Court's purported untimely reinstatement of his direct appeal on January 5, 2015. The federal district court issued Appellant a writ of execution of *habeas corpus* on March 23, 2015, mandating Appellant's release, but stayed the writ indefinitely until the Third Circuit Court of Appeals decided whether its December 12, 2014 mandate superseded this Court's June 30, 2014 stay order.

On January 6, 2016, the Third Circuit Court of Appeals vacated the federal district court's March 23, 2015 writ of execution, which had been stayed pending the federal appeal, and the case was returned to this Court for direct appellate review on the merits. Meanwhile, pursuant to this Court's order, the Commonwealth filed a substituted brief to address Appellant's claims on the merits; Appellant subsequently filed a reply brief.

As a significant prefatory matter, a substantial delay has occurred in the resolution of this appeal, largely due to Appellant's numerous federal court petitions and counsel's dissatisfaction with state process, as well as an incomplete certified record. We observe that Appellant's counsel is responsible to review the certified record on appeal, to identify and obtain any missing documents, and to provide the appellate court with a complete certified record. **See, e.g., Commonwealth v. Bongiorno**, 905 A.2d 998 (Pa.Super. 2006) (*en banc*), *appeal denied*, 591 Pa. 688, 917 A.2d 844 (2007) (stating: Pennsylvania "law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. … Under [Pa.R.A.P.] 1926, an appellate court may direct that an omission or misstatement shall be corrected through the filing of a supplemental certified record. However, this does not alter the fact that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts"). Yet, despite this Court's orders, and other informal requests to Appellant's present and prior counsel, and the trial court, Appellant's current counsel declined to take the matter seriously or show any initiative to locate and provide us with a certified copy of Appellant's written plea colloquy. Instead, counsel simply denied "possession" of the document and declined to cooperate, as if our orders and inquiries were just invitations. At this point, therefore, we will

proceed without the written colloquy.[4]

Appellant raises three substantive claims for our review:

> DID THE TRIAL COURT ERR WHEN, DURING THE PLEA COLLOQUY, IT MISINFORMED [APPELLANT] OF THE CORRECT MAXIMUM SENTENCE FOR THE OFFENSES HE FACED, OVERSTATING THE MAXIMUM BY 20 YEARS, THEREBY VIOLATING PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 590 AND THE UNITED STATES CONSTITUTION AND CAUSING THE PLEA TO HAVE BEEN MADE UNKNOWINGLY AND INVOLUNTARILY IN VIOLATION OF THAT RULE AND THE CONSTITUTION?

> DID THE TRIAL COURT ERR WHEN IT ENTERED A GUILTY PLEA ON THE CHARGES OF ATTEMPTED MURDER, DESPITE (I) [APPELLANT'S] DENIAL OF A FACT CRUCIAL TO ONE OF THE NECESSARY ELEMENTS OF THE OFFENSE AND (II) THE SUBMISSION OF FACTS ESTABLISHING AN AFFIRMATIVE DEFENSE TO THAT OFFENSE, THEREBY VIOLATING PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 590 AND THE UNITED STATES CONSTITUTION AND CAUSING THE PLEA TO HAVE BEEN MADE UNKNOWINGLY AND INVOLUNTARILY IN VIOLATION OF THAT RULE AND THE CONSTITUTION?

> DID THE TRIAL COURT ERR WHEN IT ENTERED A GUILTY PLEA WITHOUT INFORMING [APPELLANT] OF THE ELEMENTS OF THE OFFENSES OR OTHERWISE ENSURING THAT [APPELLANT] WAS SUFFICIENTLY AWARE OF THE NATURE OF THE OFFENSES, THEREBY VIOLATING PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 590 AND THE UNITED STATES CONSTITUTION AND CAUSING THE PLEA TO HAVE BEEN MADE UNKNOWINGLY AND INVOLUNTARILY IN VIOLATION OF THAT RULE AND THE CONSTITUTION?

(Appellant's Brief at 4).

_____

[4] Any waiver that could result on this basis would fall squarely on Appellant's current counsel for failure to comply with this Court's directives.

We outline Appellant's issues together because they challenge the validity of his guilty plea. Appellant's principal complaint is that the trial court, during the plea hearing, "repeatedly" misstated the potential maximum sentence Appellant was facing as a total maximum sentence of eighty-five (85) years' incarceration. Appellant claims the court essentially "threatened" him with a *de facto* life sentence, under the court's mistaken belief that the offenses of aggravated assault and attempted murder could support consecutive sentences. Appellant complains the court failed to consider the merger of aggravated assault and attempted murder, which actually made the maximum possible sentence only sixty-five (65) years' incarceration. Appellant asserts the court did nothing to inform him of the correct maximum sentence before his plea or confirm Appellant wanted to proceed with the plea before sentencing in light of the corrected maximum stated during sentencing. Appellant insists this error so "tainted" his plea process that he should be permitted to withdraw his plea.

Next, Appellant says that, even if the court had correctly informed him of the true possible maximum sentence, the court erred in two other important respects, which also call the validity of the plea into question. First, Appellant contends the court failed to verify a proper factual basis for the charge of attempted murder. Appellant insists he had to admit he used the radio to strike the victim in order to plead guilty to attempted murder; but at the guilty plea hearing, he denied using the radio to beat the victim; Appellant claims

his denial of this fact defeats any specific intent to kill. Appellant submits the stipulated facts established only that Appellant struck the victim because she had assaulted him, which represents a foundation for attempted manslaughter only. Appellant complains the court should have rejected his plea to attempted murder because the plea lacked a stipulated factual basis and instead raised an affirmative defense.

Under the second alternative basis, Appellant asserts his guilty plea was unknowing, unintelligent, and involuntary because the trial court did not describe the elements of attempted murder and robbery. Appellant claims the court could have, but did not: (1) state on the record the elements of the offenses or (2) ensure by a totality of the circumstances that Appellant understood those elements. Appellant concludes these claims individually and collectively demonstrate such a manifest injustice that he should be allowed to withdraw his plea and have the judgment of sentence vacated.

In response, the Commonwealth asserts Appellant's particular challenges to his oral plea colloquy warrant no relief because: (1) repeated previous holdings in his case have declared his guilty plea was knowing, intelligent, and voluntary; (2) the trial court's failure to discuss the merger of the offenses of aggravated assault and attempted murder for sentencing purposes was unnecessary because the court was not required to "discuss" the merger doctrine after accurately stating the "potential" statutory maximum penalties for the offenses and, more importantly, the court did

review merger before concluding the plea hearing and sentencing; (3) Appellant did not dispute that he attacked the victim, there was evidence to submit to a jury that Appellant did use a radio as a weapon, and there was ample additional record evidence to support the charges, even without using a weapon; (4) the court's failure to list the elements of the offenses during Appellant's oral colloquy is mollified under the totality of the circumstances by the use of a written guilty plea colloquy; (5) the most relief Appellant could permissibly obtain would be a remand to develop the record on the voluntariness of his plea. The Commonwealth submits the ultimate question before this Court is whether, under the totality of the circumstances, Appellant entered a valid and enforceable plea. The Commonwealth notes that, absent evidence of the content of Appellant's written guilty plea colloquy, discussions with counsel, and other independent details, none of which Appellant has provided, this Court has no reason to vacate Appellant's judgment of sentence. We agree with the Commonwealth's contentions.

Appellate review in this case implicates the following legal principles. When a defendant enters a guilty plea, he waives the right to "challenge on appeal all non-jurisdictional defects except the legality of [the] sentence and the validity of [the] plea." *Commonwealth v. Luketic*, 162 A.3d 1149, 1159 (Pa.Super. 2017). A valid guilty plea must be knowingly, voluntarily and intelligently entered. *Commonwealth v. Pollard*, 832 A.2d 517, 522 (Pa.Super. 2003). The Pennsylvania Rules of Criminal Procedure mandate

- 11 -

that pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. *Commonwealth v. Hodges*, 789 A.2d 764 (Pa.Super. 2002) (citing Pa.R.Crim.P. 590). Specifically, the court must confirm the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) the judge is not bound by the terms of the agreement unless he accepts the agreement. *See* Pa.R.Crim.P. 590 *Comment*; *Commonwealth v. Watson*, 835 A.2d 786 (Pa.Super. 2003).

Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. *Pollard, supra* at 523. Regardless of the reason for entering a guilty plea, a defendant who decides to plead guilty is bound by the statements he makes while under oath, "and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Id.* "[A] defendant who attempts to withdraw a guilty plea after sentencing must demonstrate prejudice on the order of manifest injustice before withdrawal is justified." *Commonwealth v. Pantalion*, 957 A.2d 1267, 1271 (Pa.Super. 2008). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." *Id.*

(quoting **Commonwealth v. Muhammad**, 794 A.2d 378, 383 (Pa.Super. 2002)).

On appeal, this Court evaluates the adequacy of the plea colloquy and the voluntariness of the resulting plea by looking at the totality of the circumstances surrounding the entry of the plea. **Id.** at 383-84. Even with omissions or defects in the oral guilty plea colloquy, a guilty plea will be deemed valid if the totality of the circumstances surrounding the plea shows the defendant had a full understanding of the nature and consequences of his plea and entered the plea of his own accord. **Commonwealth v. Fluharty**, 632 A.2d 312, 315 (Pa.Super. 1993). Historically, the term "totality of the circumstances" includes consideration of attendant circumstances and does **not** focus solely on direct instruction by the court. **Commonwealth v. Anthony**, 504 Pa. 551, 475 A.2d 1303 (1984). A defendant's knowledge and understanding of the charges against him are not tested solely by reference to the on-the-record plea colloquy. **Commonwealth v. Schultz**, 505 Pa. 188, 192, 477 A.2d 1328, 1330 (1984) (recognizing abrogation of *per se* approach to analyzing validity of guilty plea by limiting review solely to oral plea colloquy). **See also Commonwealth v. Eichinger**, 631 Pa. 138, 155-56, 108 A.3d 821, 832 (2014) (quoting **Commonwealth v. Yeomans**, 24 A.3d 1044, 1047 (Pa.Super. 2011)) (stating: "Even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose

that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea"). Under Pennsylvania law, the reviewing court is free to consider a wide array of relevant evidence in addition to the transcript of the actual plea colloquy, under the totality-of-the-circumstances standard, to determine the validity of a claim and plea agreement including, but not limited to, transcripts from other proceedings, off-the-record communications with counsel, and written plea agreements. **Commonwealth v. Allen**, 557 Pa. 135, 147, 732 A.2d 582, 589 (1999). **See, e.g., Fluharty, supra** (allowing reference to affidavit of probable cause as substitute for formal recitation of factual basis for plea).

With regard to the trial court's overstating the potential maximum sentence during the guilty plea process, we observe:

> Under certain circumstances, a defendant who enters a guilty plea after the court communicates an incorrect maximum sentence may be considered to have entered [his] plea unknowingly and involuntarily. **Commonwealth v. Lenhoff**, 796 A.2d 338 (Pa.Super. 2002). However, "every mistake in computing the possible maximum or advising the defendant of the possible maximum will [not] amount to manifest injustice justifying the withdrawal of a guilty plea; the mistake **must be material** to the defendant's decision to plead guilty." **Commonwealth v. Barbosa**, 819 A.2d 81, 83 (Pa.Super. 2003).

**Commonwealth v. Pantalion**, 957 A.2d 1267, 1271-72 (Pa.Super. 2008)

(emphasis added). As this Court explained in **Barbosa**:

> This determination [of materiality] must be fact- and case-specific. Certainly, if a defendant were to plead guilty to avoid a death sentence when there is no possibility of a death sentence, then this mistake would clearly be material.

- 14 -

> On the other hand, suppose…the defendant [was] told that he faced a maximum sentence of 70 to 140 years rather than 65 to 130 years. If the plea negotiations resulted in a sentence of 5 to 10 years, then this mistake would not be material.

***Barbosa, supra*** at 83 (citing these extreme examples for comparison). For example, if a defendant enters a guilty plea and justifiably believes the maximum sentence is actually less than what he could legally receive, he may not withdraw that plea unless he receives a sentence greater than what he was told. ***Commonwealth v. Warren***, 84 A.3d 1092, 1096 (Pa.Super. 2014) (quoting ***Barbosa, supra*** at 82). ***See also Commonwealth v. Carter***, 540 Pa. 135, 142, 656 A.2d 463, 466 (1995) (holding defendant facing multiple burglary and related offenses could not undo his plea, even though he did not know court could impose consecutive sentences, where defendant's aggregate sentence was less than maximum sentence he could have legally received on single burglary count; defendant was not sentenced to term that exceeded his expectations). On the other hand, we have directed the withdrawal of pleas if the defendant was justifiably unaware of or misled about the "compared to what" of the maximum sentence. ***Barbosa, supra*** at 83. ***See Commonwealth v. Persinger***, 532 Pa. 317, 615 A.2d 1305 (1992) (holding where defendant was informed of maximum sentence on each count but was not informed that his sentences could be imposed consecutively, and he received a sentence that was legal but higher than he thought possible, defendant was entitled to withdraw his plea); ***Lenhoff, supra*** (vacating guilty

plea, where defendant entered plea to avoid sentence for second degree felony as charged, but his offense should have been graded as third degree felony; plea negotiations were deemed fatally flawed); **Hodges, supra** (holding where double murder defendant was fifteen years old at time of offenses and entered guilty plea specifically to avoid death penalty, but death penalty could not be legally imposed, defendant's plea was tainted and constituted manifest injustice). Significantly, these cases have one common, unmistakable theme, *i.e.*, they all depended on the specific facts and circumstances of the case and definitely were not subject to a "*per se*" manifest injustice analysis. **See id.**

Regarding the factual basis for a guilty plea, "before accepting a plea of guilty, the trial court must satisfy itself that there is a factual basis for the plea." **Fluharty, supra** (quoting **Commonwealth v. Maddox**, 450 Pa. 406, 409-10, 300 A.2d 503, 505 (1973)). The factual-basis requirement, however, does not mean the defendant must admit every element of his crimes. **Fluharty, supra**.

In this respect, the United States Supreme Court has held:

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.
>
> Nor can we perceive any material difference between

> a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.

> *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 171 (1970). *See Commonwealth v. Cottrell,* 433 Pa. 177, 179, 249 A.2d 294, 295 (1969) ("[W]here there is significant evidence of guilt…and the accused, after adequate consultation with his counsel, decides to plead guilty, that plea is not rendered invalid merely because the accused is unable or unwilling to detail the occurrence in court").

> It would appear, therefore, that a defendant may knowingly and voluntarily enter a guilty plea as a matter of strategy or expedience even though he…is unable or unwilling to admit guilt. Nevertheless, the Pennsylvania Supreme Court has observed that if a defendant pleads guilty to a criminal charge, and in the next breath contravenes the plea by asserting facts which, if true, would establish that he is **not guilty**, then his guilty plea is of no effect and should be rejected.

> \* \* \*

> Thus,

>> when a guilty plea is accompanied by the assertion of facts which make out a defense to the crimes charged, the plea may not be accepted **unless the discrepancy is resolved**. The defendant must be aware, and the record must show that he is aware, that his defense cannot be considered when he enters a guilty plea. The record must affirmatively demonstrate that he knows that by pleading guilty he waives the opportunity to assert facts which may establish the defense.

*Fluharty, supra* at 315-16 (internal citations omitted) (emphasis added).

Likewise, "There simply is no legal requirement that a factual basis be

separately admitted after its recitation for entry of a valid guilty plea. The guilty plea proceeding is the process by which the defendant admits that he committed the actions outlined in the factual basis for the plea. Appellant entered a guilty plea; *ipso facto*, he admitted to the details of the crimes outlined in the factual basis." ***Commonwealth v. Morrison***, 878 A.2d 102, 106 (Pa.Super. 2005), *appeal denied*, 585 Pa. 688, 887 A.2d 1241 (2005). Further, the factual discrepancy asserted must involve a complete defense to the charge and, if true, establish that the defendant is not guilty. ***Commonwealth v. Sampson***, 445 Pa. 558, 285 A.2d 480 (1971). A possible mitigating factor is not a complete defense for purposes of rendering a guilty plea invalid. ***Id.*** The discrepancy must involve sufficient exculpatory evidence to vitiate the plea. ***Id.***

Regarding the elements of the crimes and nature of the offenses in the context of a guilty plea, where ample, competent evidence supports a guilty plea, allegations of manifest injustice arising from the guilty plea must go beyond a mere claim of lack of technical recitation of the legal elements of the crimes. ***Commonwealth v. Martinez***, 499 Pa. 417, 453 A.2d 940 (1982). "Even if the guilty plea colloquy lacks an explanation of the elements of the crime[s] charged, no manifest injustice occurs if the circumstances surrounding the entry of the plea indicate that the defendant understood the nature of the charge[s] against him." ***Commonwealth v. Schultz***, 505 Pa. 188, 192, 477 A.2d 1328, 1330 (1984). Absent an assertion that the

defendant did not actually understand the nature of the offenses charged, we can presume the defendant had notice of the crimes in sufficient detail to support the guilty plea. *Martinez, supra* at 556-57, 475 A.2d at 1306. Thus, no "ritualistic litany of the formal legal elements" of the offense is required to be read to the defendant at the hearing. *Id.*

> A guilty plea is an acknowledgement by a defendant that he participated in the commission of certain acts with a criminal intent. He acknowledges the existence of the facts and the intent. The facts that he acknowledges may or may not be within the powers of the Commonwealth to prove. However, the plea of guilt admits that the facts and intent occurred, and is a confession not only of what the Commonwealth might prove, but also as to what the defendant knows to have happened.
>
> A defendant may plead guilty for any reason: to shield others, avoid further exposure, to diminish the penalty, to be done with the matter, or any secret reason that appeals to his needs. What is generally and most objectively accepted is that a plea is offered to relieve conscience, to set the record straight and, as earnest of error and repentance, to accept the penalty.

*Id.* at 557-58, 475 A.2d at 1307. Moreover,

> A guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. If a defendant voluntarily, knowingly, and intelligently wishes to acknowledge facts that in themselves constitute an offense, that acknowledgement is independent of the procedures of proving or refuting them. How they would be proved, what burdens accompany their proof, what privileges exist to avoid their proof, what safeguards exist to determine their accuracy, and under what rules they would be determined, by whom and how, are irrelevant. The defendant is before the court to acknowledge facts that he is instructed constitute a crime. He is not there to gauge the likelihood of their proof [or] to weigh them in the light of the available procedures for their proof. He is there to voluntarily say

what he knows occurred, whether the Commonwealth would prove them or not, and that he will accept their legal meaning and their legal consequence.

*Id.* at 559, 475 A.2d at 1307-08.

As a whole, the plea-bargaining process is a significant part of the criminal justice system; concerning negotiated plea agreements:

[W]here the guilty plea agreement between the Commonwealth and a defendant contains a negotiated sentence…and where that negotiated sentence is accepted and imposed by the court, a defendant is not allowed to challenge the discretionary aspects of the sentence. ***Commonwealth v. Reichle***, [589 A.2d 1140 (Pa.Super. 1991)]. We stated, "If either party to a negotiated plea agreement believed the other side could, at any time following entry of sentence, approach the judge and have the sentence unilaterally altered, neither the Commonwealth nor any defendant would be willing to enter into such an agreement." *Id.* at 1141.

***Commonwealth v. Byrne***, 833 A.2d 729, 735 (Pa.Super. 2003) (some internal citations omitted). To allow an appellant to avoid his sentence after he entered into a negotiated plea "would undermine the designs and goals of plea bargaining" and "make a sham of the negotiated plea process." *Id.* (quoting ***Reichle, supra***).

Instantly, Appellant entered a negotiated guilty plea for his involvement in the brutal assault of the victim. Appellant failed to object to the validity of his plea during the plea colloquy or file a post-sentence motion to withdraw his plea. When Appellant sought *habeas corpus* relief in federal court, the district court deemed defense counsel ineffective because counsel had failed to consult Appellant before discontinuing his first direct appeal; and the federal

- 20 -

court restored those direct appeal rights solely on that basis.

In his initial reinstated direct appeal, Appellant raised for the first time, in his Rule 1925(b) statement, his complaint about the trial court's miscommunication of the possible maximum sentence and argued that position in his reinstated direct appeal. The Commonwealth objected to Appellant's contention on the ground that he had waived his right to an appellate decision on the merits for failure to follow proper state procedure, *i.e.*, objecting to the plea during the colloquy or filing a post-sentence motion to withdraw the plea. When this Court held Appellant's claims were procedurally waived, **we made clear** that his current counsel should seek merits review by filing a PCRA petition and arguing the issue under the rubric of ineffective assistance of counsel. *See Commonwealth v. Lincoln*, 72 A.3d 606, 611 (Pa.Super. 2013).

Rather than follow this Court's express directive, Appellant's counsel went instead straight back to federal court, seeking relief in the form of reinstatement of Appellant's direct appeal rights for the second time in order to have his state-court claim addressed directly on the merits. This fundamentally erroneous but strategic move cost Appellant over a year in additional federal judicial review.[5]

_____

[5] No doubt Appellant already enjoyed a sympathetic rapport with the federal court. On the other hand, if Appellant had observed this Court's directive in 2013, then his claim(s) would have been addressed readily, albeit subject to

Nevertheless, after a long delay largely of Appellant's counsel's making, on January 5, 2015, this Court lifted the June 30, 2014 stay on Appellant's emergency application to reinstate his direct appeal *nunc pro tunc* for the second time and reinstated his direct appeal on the merits. More delay ensued due to Appellant's dissatisfaction with the timing and manner in which his appeal was reinstated, which complaints he again took to federal court. Upon his return from federal court, we sought to complete the record for review, but without any cooperation from Appellant's counsel or success.

With respect to Appellant's claim that his plea was tainted because the court misstated the maximum sentence, Appellant's oral plea colloquy and sentencing transcript demonstrates: (1) the court did misstate the maximum penalty when it said it could impose a total maximum sentence of eighty-five (85) years' incarceration, because the maximum sentence available in this case was sixty-five (65) years' incarceration; but (2) the court's

---

a more rigorous examination under the three-pronged PCRA test for ineffective assistance of counsel. In essence, Appellant failed to exhaust his state remedies before he returned to the federal court for additional relief. Because Appellant was required to pursue PCRA review before heading to federal court, *habeas relief* probably should not have been extended to him at that time. Instead, the federal court should have dismissed his *habeas corpus* petition due to the availability of state corrective remedies. **See generally** 28 U.S.C.A. § 2254; **Commonwealth v. Lambert**, 765 A.2d 306 (Pa.Super. 2000). In any event, Appellant successfully did an end run around his state PCRA remedies, skirted the enhanced review required under the PCRA, and had the federal court order the second reinstatement of his direct appeal, this time clarifying that the state court must review Appellant's claims on the merits.

misstatements were eventually corrected and plainly immaterial to Appellant's plea.

Specifically, when Appellant initially came into court for the plea colloquy and sentencing, which occurred at the same hearing, the court began by outlining the maximum sentence for each principle offense charged: robbery, aggravated assault, attempted murder, theft, and possession of an instrument of a crime. In adding up the potential maximum sentences, the court misstated the aggregate maximum sentence as eighty-five years, without consideration of the merger of aggravated assault and attempted murder. The court also reviewed Appellant's statement admitting he did repeatedly hit the victim and took money from her social security check. (*See* N.T., Oral Plea Colloquy and Sentencing, 10/27/03, at 2-4.) Nevertheless, the transcript makes very clear Appellant came into court already armed with the Commonwealth's offer of a sentence of twenty to forty years, which the court right away acknowledged. (*Id.* at 4-7.) Appellant was permitted to consult with his attorney at this point. After consultation, Appellant's attorney relayed something to the Commonwealth off the record, and the Commonwealth agreed to amend its sentence offer to two options: (a) sixteen to forty years or (b) seventeen and one half to thirty-five years, either one followed by a term of probation for the court to decide, in exchange for a guilty plea to the four charges of robbery, aggravated assault, attempted murder, and possession of an instrument of crime. (*Id.* at 7.) Appellant offered to plead

guilty to robbery and aggravated assault in return for sixteen to forty years. (*Id.* at 8.) The plea colloquy continued, during which the court confirmed Appellant's understanding that he was waving his rights to a jury trial and the presumption of innocence as well as his rights to pretrial motions and a speedy trial. (*Id.* at 9-12.) The court also made sure Appellant understood the few limited rights he would retain for appellate review, and Appellant affirmed he was satisfied with his attorney's representation. (*Id.* at 13-14.)

The Commonwealth then proceeded with a detailed summary of the facts of the case, including the extent of the victim's injuries and surgeries, Appellant's statement of provocation and how he hit the victim, and the potential trial testimony of witnesses. (*Id.* at 14-20.) The court then asked Appellant if he wanted to add, subtract, or change anything in the factual recitation. (*Id.* at 20.) In that exchange, the court confirmed Appellant's agreement to the facts that Appellant hit the victim in the face a lot and took her money. Appellant disputed the use of the radio. (*Id.* at 21-23.)

Ultimately, Appellant agreed to plead guilty to the three charges of robbery, aggravated assault, and attempted murder only. (*Id.* at 24-25). Before the court formally imposed the sentence, there was a sidebar off the record, and the court stated:

> [Court]: Okay, I had given you the sentence wrong. On 0305-501 charging you with attempted murder, I'm going to impose the recommended sentence of not less than 16, [or] more than 40 years in a state correctional institution.
>
> Aggravated assault will merge, and on robbery I'm going to

sentence you to 20 years['] probation and that will be consecutive to that for the attempted murder charge. Your effective sentence here today is not less than 16 nor more than 40 years to be followed by 20 years' probation. …

(*Id.* at 27). Appellant's counsel apprised Appellant of his appellate rights on the record, (*id.* at 28), and the proceedings ended by agreement and without additions or objection.

When read in context, the plea/sentencing transcript demonstrates Appellant came into the plea/sentencing proceedings with a deal in place. Appellant fully participated in the proceedings and artfully reduced the charges he pled to and renegotiated his original sentence deal from twenty to forty years to sixteen to forty years, rejecting the other offer of seventeen and one half to thirty-five years. The record shows Appellant's focus on the lowest possible minimum sentence dominated his plea bargaining. The transcript also indicates the existence of a written plea colloquy, which is not in the certified record. Following this Court's orders and inquiries, current counsel simply denied responsibility for procuring it without showing any effort to obtain it. ***See Bongiorno, supra***. The only inference we can draw from counsel's dismissive response is that the written colloquy would not have actively supported Appellant's contentions. Further, Appellant's chosen sentence was significantly less than the maximum possible sentence allowable by law. ***See Warren, supra***; ***Carter, supra***. Therefore, we conclude the court's misstatements about the maximum sentence, which the court corrected, were immaterial to Appellant's guilty plea and did not render it

- 25 -

unknowing, involuntary, or unintelligent. *See Barbosa, supra*.

In its opinion, the trial court addressed Appellant's other complaints concerning the factual basis for the plea, the elements of the crimes and the nature of the offenses as follows:

> [Appellant contends] that he should not have been able to enter a guilty plea on the charge of attempted murder because the issue as to whether he struck the victim with a radio was in dispute. Regardless [of] whether [Appellant] used a radio, he pled guilty after the District Attorney stated that she would present the following evidence, had there been a trial:
>
> > [A]t which point he flipped out. He then admits—he said, did you hit her? Yes. How many times? I don't know. Was it a lot? Probably. Where did you hit her? In the face. What did you hit her with? My hands. … Your Honor, the victim would testify that she was not hit with just hands. She was also hit with a radio. That radio was confiscated and submitted to the police lab where a reddish-brown stain was on the back, along with droplets on the bottom edge, [the] top of the radio [was also] tested and tested positive for blood and human protein.
>
> Given this recitation of the evidence as it would be presented to a jury, [Appellant] still opted to plead guilty. He did not agree that he utilized a radio in the commission of this crime, but this is not a necessary element of the crime of attempted murder. Under Pennsylvania law, a person "commits an attempt when, with the intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." [18] Pa.C.S.A § 901(a). If a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder. *Commonwealth v. Dale*, 836 A.2d 150, 15[3] (Pa.Super. 2003). Nowhere in our crimes code does it mandate that, to be convicted of any degree of murder, a[n appellant] must use a weapon besides his own hands. This [c]ourt is unable to see how the issue of

whether [Appellant] used the radio has any bearing on whether he attempted to kill his victim.

[Appellant] also contends that he submitted several facts which would have established an affirmative defense of "heat of passion."  This claim should likewise fail, as a negotiated plea deal is no place for an affirmative defense.  A negotiated plea deal is just that—an agreement to a specific sentence based on [Appellant's] agreeing to the facts as the prosecution lays them out.  If [Appellant] did not agree to these facts, he was not required to accept the deal.  He could have gone to trial and presented any evidence that he had which might [have] allow[ed] for a "heat of passion" defense.  At that point, a jury would have determined whether he committed these crimes.  Instead, however, he opted to accept the deal offered by the prosecution, which, in exchange for a shorter sentence, limited his trial rights.  Further, this issue is not ripe for appeal as there is no place in the transcript which indicates that [Appellant] attempted to even raise this issue [before] this [c]ourt.

\* \* \*

[Appellant] alleges that this [c]ourt erred when it did not list the elements of each offense or otherwise ensure that [Appellant] knew of the elements of each offense.  There is likewise no merit to this claim.  This [c]ourt ensured that [Appellant] knowingly, voluntarily, and intelligently waived his rights to a jury trial and pled guilty to the charges as they were presented to [him].  Specifically spelling out the elements of each crime is not necessary where it is clear that the [c]ourt explained the nature of the charges during the colloquy. …

It is clear from the transcript that [Appellant] was made aware of the nature of the charges against him, even if he was not clear on the specific elements of each charge.  This [c]ourt meticulously confirmed that he knowingly, voluntarily, and intelligently pled guilty after the entire colloquy was completed, and this [c]ourt properly accepted that plea.

(Trial Court Opinion, filed September 25, 2012, at 3-5).  The record supports

the court's analysis. **See Muhammad, supra**. Here, Appellant actively participated in the plea-bargaining process which continued throughout the plea proceedings, and he failed to raise a complete affirmative defense or exculpatory matters which could call the validity of his plea into question. **See Sampson, supra** (stating existence of possible mitigating factor is not complete defense for purposes of rendering guilty plea invalid; claimed discrepancy must involve sufficient exculpatory evidence to vitiate plea completely).

Additionally, in preparation for his plea, Appellant had for his information, *inter alia*, the criminal complaint and other charging documents listing the elements of the offenses, the witnesses' statements, the victim's medical records, and the preliminary hearing testimony. Thus, Appellant was fully informed of the nature and elements of his offenses. **See Schultz, supra**; **Martinez, supra**. Under the circumstances disclosed in the record as provided, Appellant understood the factual predicate for his plea and the nature of the offenses and charges against him. Thus, no "manifest injustice" occurred on these grounds. Based upon the foregoing, we conclude Appellant's claims are insufficient to merit relief.[6] Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Allen did not participate in the consideration or decision of this case.

---

[6] Even if Appellant's claims had any merit, the proper relief would be to allow him to withdraw his guilty plea; he would not be entitled to release from custody.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/18/2017</u>